Estate of John H. Scheide, Deceased, William H. Scheide and Harriet Hurd Scheide, Executors v. Commissioner.
Estate of John H. Scheide, Deceased v. Commissioner
Docket Nos. 2235, 12328.
United States Tax Court
1947 Tax Ct. Memo LEXIS 24; 6 T.C.M. (CCH) 1271; T.C.M. (RIA) 47321; December 3, 1947
Sanford D. Beecher, Esq., 1617 Land Title Bldg., Philadelphia, Pa., for the petitioners. William H. Best, Jr., Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $294,063.55 in estate tax. The following questions have been submitted for decision: (1) Should the value of a 1935 inter vivos gift by the decedent to his wife be included in the gross estate under the provisions of sections 811 (c) either as a transfer made with the possession or enjoyment, or the right to income, retained by the decedent or as a transfer made in contemplation of death? (2) Were inter vivos gifts to decedent's son in 1941 made in contemplation of death? (3) What was the fair market value *25 of 300 shares of the stock of LouisianaCentral Lumber Company at the date of death? (4) What was the fair market value of 300 shares of stock of Louisiana Central Oil & Gas Company at the date of death? Findings of Fact The decedent died on September 29, 1942 at the age of 67 as a result of a coronary occlusion. He was survived by his wife and their only child, William. The estate tax return was filed with the collector of internal revenue for the twenty-third district of Pennsylvania. The decedent, in 1922, made a gift to his wife of their home. He made a gift to her in 1923 of securities having a fair market value of $184,400. She thereafter paid the household bills and operating expenses She did so as a matter of choice, there being no agreement with the decedent or condition attached to the gifts which obligated her to make such payments. Her practice of running the household and paying its expenses out of her own income became a family custom and a matter of personal pride with her. The income from the 1923 gift was always substantially in excess of the amounts expended annually by her for household expenses. The decedent made another gift to his wife in 1935 of securities *26 having a fair market value of $363,169.50. The respondent included $221,025 of that gift in the gross estate of the decedent "under the provisions of section 811 (c) of the Internal Revenue Code relating to the possession or enjoyment of, or the right to income, and also as a transfer made in contemplation of death within the meaning of the Estate Tax Act." He arrived at the $221,025 figure by capitalizing at 4 per cent the average annual expenditure of $8,841.70 made by the decedent's wife in payment of the household expenses during the years 1936 to the time of the decedent's death in 1942. There was no connection between the 1935 gift to his wife and the subject of household expenses. The gift was complete and unconditional. She was free to do with it as she pleased. The decedent never exercised any control over her use of the income therefrom. There was no change in the treatment and payment of the household expenses after the 1935 gift was made. The decedent did not retain for any period the possession or enjoyment of, or the right to the income from, the property transferred to his wife in 1935. His principal motives in making that gift were to provide *27 her with an independent income of her own of the size he thought desirable, to reduce his income taxes and to avoid an anticipated increase in the gift tax rates. The decedent's 1935 gift to his wife was not made in contemplation of death. The decedent made gifts to his son late in 1941. They consisted of securities and cash in the total amount of $386,628.66. The respondent included those gifts in the gross estate of the decedent as transfers made in contemplation of death. [1] The decedent's principal motives in making those gifts were to reduce his income taxes, to avoid an anticipated increase in the rate of gift taxes, and to provide his son with enough income to make him financially independent. The 1941 gifts to his son were not made in contemplation of death. The decedent was the owner at the time of his death of 300 shares of the stock of Louisiana *28 Central Lumber Company and 300 shares of the stock of Louisiana Central Oil & Gas Company which were reported for estate tax purposes at the values of $50 per share and $40 per share respectively as of the date of his death. The Commissioner, in determining the deficiency, held that the Louisiana Central Lumber Company stock had a value of $182.86 per share and the Louisiana Central Oil & Gas Company stock had a value of $44.72 per share. The fair market value of the shares of Louisiana Central Lumber Company stock was $27,000 and the fair market value of the shares of Louisiana Central Oil & Gas Company stock was $13,416 at the date of death of the decedent. Opinion MURDOCK, Judge: The gifts in controversy are the one made to the wife in 1935 and those made to the son in the latter part of 1941. Findings have been made that none of those gifts was made in contemplation of death. The evidence in regard to the health of the decedent shows that he was in his usual health when he made the transfers and he was not prompted to make any of the gifts by reason of ill health. No good purpose would be served by reviewing all of the evidence on that subject. Suffice to say that it at *29 least preponderates in the petitioner's favor. His principal motives in making the 1935 gift to his wife were to provide her with sufficient income that she would be financially independent, to reduce his own income taxes, and to accomplish those results before an anticipated increase in the gift tax rates took place. His principal motives for making the gifts to his son in 1941 were similar. Those motives were associated with life rather than with death. The decedent's income had increased due to the death of his sister and her husband. He had ample income for his own needs and decided to give away a part of his property, first, so that his wife could have independent income, and, later, so that his son could have independent income. It seems altogether likely that the decedent was fully aware of the estate tax benefits, but the evidence as a whole indicates that any purpose which he may have had to reduce estate taxes was not the dominant motive for the transfers. The Commissioner did not include the entire value of the gift to the wife in the gross estate as a transfer made in contemplation of death, but he included only a part of it on the theory that the decedent retained for *30 his life the enjoyment of or the right to the income from the property. He argues that the decedent had an understanding with his wife whereby she was to pay the household expenses out of the income from the property which he gave her. The evidence shows, however, that the wife was not limited or restricted in any way in the use of the property or the income therefrom and the decedent had no right to have any of the income used to discharge his obligations. The other questions for determination are the fair market values of 300 shares of stock of LouisianaCentral Lumber Company and a like number of shares of stock of the Louisiana Central Oil & Gas Company at the date of the death of the decedent. Almost no evidence of the fair market value of the latter stock was introduced and, as a consequence, a finding has been made that the fair market value was the same as the value determined by the Commissioner. The evidence relating to the value of the Louisiana Central Lumber Company stock is rather meager, but such evidence as there is in the record tends to show that the Commissioner's determination was much too high. It does not justify a finding, however, that the value was as low *31 as that contended for by the petitioners. All of the evidence has been considered in arriving at the finding of the fair market value of the stock. Decision will be entered under Rule 50. Footnotes
1. Both parties agree that the Commissioner determined the deficiency in part by including in the gross estate of the decedent in 1941 gifts made to the son. Those gifts total $386,628.66. The statement attached to the notice of deficiency shows that total to be $360,673.53. The difference of $25,955.13 is unexplained.↩