ESTATE of Daniel McNICHOL, Deceased, Ellen McNichol Evangelista and Joseph G. McNichol, Executors, Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12756.

United States Court of Appeals Third Circuit.

Argued Feb. 5, 1959.

Decided April 17, 1959.

James J. Regan, Jr., Bala-Cynwyd, Pa., for petitioner.

Loring W. Post, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before GOODRICH and STALEY, Circuit Judges, and STEEL, District Judge.

STEEL, District Judge.

More than nine years before his death, the decedent purported to convey certain income-producing real estate to his children. Thereafter, pursuant to an oral understanding with his children, the de-

cedent continued to receive the rents from the properties until his death. The Tax Court held that the properties were includable in the decedent's gross estate under § 811(c) (1) (B) of the I.R.C. of 1939.[1] 29 T.C. 1179. That decision is before us for review.

The following findings by the Tax Court are supported by the record and are accepted as a basis for our decision:

Between 1939 and 1942 the decedent, a Pennsylvania resident, executed general warranty deeds to his children for income-producing real estate, together with the rentals therefrom, which he owned in Pennsylvania. The deeds were recorded. They reserved no interest in the realty or rents to the decedent, and the decedent received no consideration in connection with the transaction. Following the execution of the last deed the grantees, as owners-landlords entitled to the rental income, registered the properties with the O.P.A.

Contemporaneously with and subsequent to the execution of the deeds, it was orally understood between the decedent and his children that the decedent should retain for his lifetime the income from the real estate. In accordance with this understanding the decedent actually received all of such income from the dates of the deeds to the time of his death.

In his federal income tax returns for 1948 to 1950, inclusive, and for the period from January 1, 1951 to the time of his death on June 17, 1951 the decedent reported the rents as his personal income[2]. In the same returns the decedent claimed as deductions depreciation, taxes and water rent applicable to the properties.

The petitioners contended before the Tax Court that under Pennsylvania law the deeds conferred upon the children a fee simple title, that the Pennsylvania statute of frauds barred the grantor from enforcing his oral understanding against his children, and that the grantor therefore had retained no "right" to the income "under" the transfer within the meaning of the statute. The Tax Court rejected this argument and held that Pennsylvania law was immaterial, and that the test of gross estate includability under § 811(c) (1) (B) was a factual one; i. e., whether a decedent in reality had retained possession or enjoyment of the property. Finding that the collection of the rents by decedent pursuant to his understanding with his children constituted a factual enjoyment of the properties under the transfer, the Tax Court held that the properties were properly included in decedent's gross estate.

Petitioners argue that § 811(c) (1) (B) is inapplicable to a transfer with a retained income interest unless that interest is reserved in the instrument of transfer. This argument is based upon the statutory provision that

**1.** Section 811 (c) (1) reads:
"§ *811. Gross estate*
"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—
\*     \*     \*     \*     \*
"(c) *Transfers in contemplation of, or taking effect at, death*
"(1) *General rule.* To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death; or
"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or
"(C) intended to take effect in possession or enjoyment at or after his death". 26 U.S.C. § 811.

**2.** The record fails to reveal how the rents were treated in prior periods.

the income must be retained *"under"* the transfer. This is too constricted an interpretation to place on the statute. The statute means only that the life interest must be retained in connection with or as an incident to the transfer. That the reservation need not be expressed in the instrument of transfer is implicitly recognized by the reciprocal trust decisions. Orvis v. Higgins, 2 Cir., 1950, 180 F.2d 537; Cole's Estate v. C. I. R., 8 Cir., 1944, 140 F.2d 636; Moreno's Estate v. C. I. R., 8 Cir., 1958, 260 F.2d 389. They hold that when two persons separately create equivalent trusts simultaneously, with income payable from each trust to the settlor of the other, the property transferred by each settlor is nevertheless subject to § 811 (c) (1) (B) even though neither trust instrument reserves any interest in the income to its settlor or refers to the companion trust. Petitioners' argument is irreconcilable with these holdings. It is also at odds with Harter v. U. S., 48 AFTR 1964, 55-1 USTC ¶ 11,503 (N.D. Okla.1954). Neither Higgs Estate v. C. I. R., 3 Cir., 1950, 184 F.2d 427, nor C. I. R. v. Twogood's Estate, 2 Cir., 1952, 194 F.2d 627, relied upon by petitioners bear upon the problem.

■ Next, petitioners point out that the statute speaks of the retention of "the right to the income". Emphasizing the word "right", petitioners argue that Congress has decreed that § 811(c) (1) (B) is applicable only if a transferor reserves to himself an enforceable claim to the income. Since, according to petitioners, the statute of frauds of Pennsylvania would foreclose judicial enforcement of the oral understanding between the decedent and his children, petitioners conclude that the decedent had no "right" to the income from the property [3].

■ It is not necessary for us to delve into Pennsylvania law, for the question is not one of local law. Rather, it is whether Congress intended that § 811(c) (1) (B) should subject to an estate tax property conveyed under circumstances which here prevail. While state law creates legal interests and rights, it is the federal law which designates which of these interests and rights shall be taxed. Morgan v. Commissioner, 1940, 309 U.S. 78, 80–81, 60 S.Ct. 424, 84 L. Ed. 585; Helvering v. Stuart, 1942, 317 U.S. 154, 162, 63 S.Ct. 140, 87 L.Ed. 154.

In seeking to discover the type of transfers at which § 811(c) (1) (B) is aimed, the words "right to the income" are not entitled to undue emphasis. Section 811(c) (1) (B) states that property which has been transferred *inter vivos* is includable in the gross estate of a decedent when the decedent "has retained for his life * * * the possession or enjoyment of, or the right to the income from the property * * * ". Thus, the statute deals with two things: retention of "possession or enjoyment" and retention of "the right to the income".

■ The history of the statute discloses that "the right to the income" clause was not intended to limit the scope of the "possession or enjoyment" clause used in § 811(c) (1) (B) [4]. Section 811

3. The law of Pennsylvania seems not to be as unqualified as petitioners state. If the decedent's children had refused to honor their oral agreement and had collected the rent themselves, the statute of frauds would not have barred the decedent from recovering the rents from the children if, as in the case at bar, they admitted the existence of the oral agreement. Under the circumstances hypothesized decedent would have had an enforceable claim against his children. Metzger v. Metzger, 1940, 338 Pa. 564, 14 A.2d 285, 129 A.L.R. 683; Kauffman

v. Kauffman, 1920, 266 Pa. 270, 109 A. 640.

4. Section 811 makes two references to "possession or enjoyment". The first is in § 811(c) (1) (B) where "under" the transfer the transferor "retained for his life * * * possession or enjoyment * * *". The second is in § 811(c) (1) (C) where the transfer was "intended to take effect in possession or enjoyment" at or after the transferor's death. See footnote 1. Why there should be a dual reference to "possession or enjoyment" has been queried. Commissioner v. Es-

(c) (1) (B) derives directly from § 302 (c) of the Act of 1926, as amended in 1931 and 1932, 26 U.S.C.A. Int.Rev.Acts, pages 227, 228. The amendment of 1931 included for the first time express language taxing property which had been transferred *inter vivos* with a lifetime retention of "the possession or enjoyment of, or the income from" the property. This amendment said nothing about the "right to" income. The words "right to" were inserted for the first time by the 1932 amendment, and the language of the 1932 amendment was carried over into § 811(c) of the I.R.C. of 1939. This insertion was to make clear that Congress intended that the statute should apply to cases where a decedent was entitled to income even though he did not actually receive it. H.R.Rep. No. 708, 72d Cong.; 1st Sess. pp. 46–7 (C.B. 1939–1, Part 2, pp. 490–1); Sen.Rep. No. 665, 72d Cong.; 1st Sess. pp. 49–50 (C.B. 1939–1, Part 2, p. 532)[5]. Hence, the "right to income" clause, instead of circumscribing the "possession or enjoyment" clause in its application to retained income, broadened its sweep.

The conclusion is irresistible that the petitioners' decedent "enjoyed" the properties until he died. If, as was said in Commissioner v. Estate of Church, supra, 335 U.S. at page 645, 69 S.Ct. 322, the most valuable property attribute of stocks is their income, it is no less true that one of the most valuable incidents of income-producing real estate is the rent which it yields. He who receives the rent in fact enjoys the property. Enjoyment as used in the death tax statute is not a term of art, but is synonymous with substantial present economic benefit. Commissioner v. Estate of Holmes, 1945, 326 U.S. 480,

486, 66 S.Ct. 257, 90 L.Ed. 228. Under this realistic point of view the enjoyment of the properties which the decedent conveyed to his children was continued in decedent by prearrangement and ended only when he died. The transfers were clearly of a kind which Congress intended that § 811(c) (1) (B) should reach.

This conclusion, petitioners insist, is irreconcilable with the decisions in Nichols v. Coolidge, 1927, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 and in Burr's Estate, 4 T.C.M. 1289 (1945), Scheide's Estate, 6 T.C.M. 1271 (1947), and Richards' Estate, 1953, 20 T.C. 904. The cited Tax Court decisions may be dispatched summarily. In none of them did it appear, as it does in the case at bar, that the transferor retained the income from the transferred property by virtue of an understanding between the transferor and transferee at the time of the transfer.[6]

Nichols v. Coolidge, supra, however, may not be so readily disposed of. There, the grantor without consideration had conveyed the fee of her residences to her children, with a contemporaneous lease back for a nominal consideration. It was understood that the lease would be renewed so long as the grantor desired. Four years later the grantor died. The Commissioner included the realty in the decedent's gross estate under § 402 of the Act of 1919, 40 Stat. 1097 on the ground that the transfer was "intended to take effect in possession or enjoyment at or after his death". The District Court held that the Commissioner's action was unauthorized. It reasoned that the grantor had no "valid agreement" for the renewal of the lease, that the conveyance gave the grantees full possession and en-

tate of Church, 335 U.S. 632, 660, footnote 9, 69 S.Ct. 322, 93 L.Ed. 288.

5. In referring to the changes made by the 1932 Act to the Joint Resolution of March 3, 1931, H.R.Rep. No. 708 states: "(3) The insertion of the words 'the right to the income' in place of the words 'the income' is designed to reach a case where decedent had the right to the in-

come, though he did not actually receive it. This is also a clarifying change." Sen.Rep. No. 665 says the same thing.

6. We intimate no opinion as to whether we would have followed these decisions if, in the case before us, the decedent had received the rents following the transfer without an agreement with his children that he might do so.

joyment of the properties, and that the transaction vested in the grantees "complete title". The Supreme Court affirmed upon the basis of the District Court decision.

The present-day importance of Nichols v. Coolidge can be understood only when it is viewed in its historical setting. The statute under which it was decided provided that property transferred *inter vivos* should be included in the gross estate of a decedent when the transfer was [274 U.S. 531, 47 S.Ct. 711]

"* * * in contemplation of or intended to take effect in possession or enjoyment at or after his death."

Interpreting this same statutory language four years later, the Court held in May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, that property which had been irrevocably transferred under a formal agreement of trust reserving to the settlor an interest in the income terminable at his death was not includable in the gross estate of the settlor since the title had vested in the transferee at the time of transfer. Although May v. Heiner made no reference to Nichols v. Coolidge, both decisions turned upon the fact that legal title had been technically transferred prior to death, and hence the transfer was not "intended to take effect in possession or enjoyment at or after his death". [281 U.S. 238, 50 S.Ct. 287]. This dispositive principle was reaffirmed on March 2, 1931 in Burnet v. Northern Trust Co., 1931, 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 1931, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, and Mc-

Cormick v. Burnet, 1931, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, by *per curiam* decisions based upon May v. Heiner. These decisions upset the long-standing Treasury interpretation of the "intended to take effect in possession or enjoyment" clause which had been in the Revenue Act since 1916, 39 Stat. 777 [7].

The following day Congress, in order to close the obvious tax loophole which the decisions had opened, adopted the Joint Resolution of March 3, 1931. This resolution redefined the phrase "intended to take effect in possession and enjoyment at or after his death" so that it would include a transfer under which the transferor "retained for his life * * * the possession or enjoyment of, or the income from" the transferred property [8]. This provision and its substantial embodiment in later amendments to the Revenue Act made taxable property which had been transferred *inter vivos* under a formal declaration of trust with a life estate reserved to the settlor. That was its purpose. By this resolution Congress rejected the view of May v. Heiner and its progeny that estate tax includability depended upon whether or not title had technically passed. Cf. Hassett v. Welch, 1938, 303 U.S. 303, 309–310, 58 S.Ct. 559, 82 L.Ed. 858. The premise of Nichols v. Coolidge was precisely the same as that of May v. Heiner; hence, the effect of the Joint Resolution was to undo Nichols v. Coolidge as well. Since Congress barred resort to formal trust agreements with reserved life estates as a means of circumventing the payment of death taxes, it is unreasonable to conclude that it intended to permit the ac-

7. The history of the "possession or enjoyment" clause, is detailed in Commissioner v. Estate of Church, supra, 335 U.S. at pages 637–639, 69 S.Ct. at pages 325, 326, 93 L.Ed. 288.

8. Section 302(c) of the Act of 1926 as amended by the Joint Resolution of March 3, 1931, taxed *inter vivos* transfers, by trust or otherwise,

"* * * in contemplation of or intended to take effect in possession or enjoyment at or after (the transferor's) death, *including a transfer under which*

*the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from the property * * *".*

The italicized words were added by the Joint Resolution of March 3, 1931.

The phrase "the income from" which was placed in the statute by the Joint Resolution of March 3, 1931, was changed to read "the right to the income from" by § 803(a) of the 1932 Act. See discussion at pages 5–6 of this opinion. [265 F.2d 670].

complishment of the same result by an oral agreement having an identical effect.

The saying that a man is as good as his bond is an expression born of experience which fortunately is not too common. And when filial devotion and respect in fact justifies the faith which a parent reposes in his children in transferring property to them upon their oral assurance that the income is to be his for life, it is entirely artificial to hold that the parent did not retain the enjoyment of the property until his death simply because his receipt of its income accrued under an oral agreement rather than one more formal in nature. Nothing in the language of § 811(c)(1)(B) suggests that such a tenuous distinction was intended.

What we have said finds substantiation in the basic philosophy of Commissioner v. Estate of Church, supra, which expressly repudiated May v. Heiner [9]. The Church opinion emphasizes that the criterion for determining whether property transferred *inter vivos* is subject to a death tax is the effect of the transfer, and states that whenever in fact the ultimate possession or enjoyment of property is held in suspense until the death of the transferor, the property is swept into the decedent's gross estate by the statute. Substance and not form is made the touchstone of taxability. The Court holds that an estate tax cannot be avoided by a gift unless it is (335 U.S. at page 645, 69 S.Ct. at page 329, 93 L.Ed. 288):

> " * * * a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. * * * "

It is true that the Church opinion refers to "a property right" in the income, "the right to the income", the "right to possess or to enjoy the property" and other expressions which may be pointed to as imputing legal collectability of the income. The Church language was, of course, patterned to fit the situation with which the Court was dealing, i. e., a transfer of property under a formal trust agreement in which the trustor retained an enforceable right to the income. But as we read the decision its bite goes deeper; and the opinion constitutes a sweeping and forthright declaration that technical concepts pertaining to the law of conveyancing cannot be used as a shield against the impact of death taxes when in fact possession or enjoyment of the property by the transferor—and more particularly his enjoyment of the income from the property—ceases only with his death.

Section 7(b) of the Technical Changes Act of 1949, 63 Stat. 895, 26 U.S.C.A. § 811 note, did not impugn the basic soundness of the Church concept of "possession and enjoyment". While it nullified the prospective effect of the Church decision in its application to transfers antedating the Joint Resolution of 1931, this simply reflected Congressional solicitude for taxpayers who, in reliance upon May v. Heiner, had refrained from divesting themselves of life estates reserved under trusts created prior to the Joint Resolution of 1931. See Sen.Rep. No. 831, 2 U.S.C. & Cong.Serv., 81st Cong., 1st Sess. 1949, pp. 2172, 2180. Since the transfers at bar were effected between 1939 and 1942 the *rationale* of the Church case is directly apposite.

The decision of the Tax Court will be affirmed.

---

**9.** Church involved an interpretation of the "intended to take effect in possession or enjoyment" clause as it applied to a transfer in 1924. It was necessary to resort to this clause because Hassett v. Welch, supra, had held that the Joint Resolution of March 3, 1931, as amended in 1932, was inapplicable to prior transfers.

In the case at bar we are enjoined by § 811(c) (1) (C), (2) of the 1939 I.R.C. from applying the "intended to take effect in possession or enjoyment" clause.