Elizabeth **W. STEPHENSON** and **The First National Exchange Bank of Virginia, Executors and Trustees under the will of Walter G. Stephenson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 64–C–32–R.

United States District Court
W. D. Virginia,
Roanoke Division.

Feb. 9, 1965.

---

Joseph Wysor Smith, Hazlegrove, Shackelford & Carr, Roanoke, Va., for plaintiffs.

C. Moxley Featherston, Myron C. Baum, H. Stennis Little, Jr., Dept. of Justice, Washington, D. C., Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This is an action by the plaintiffs to recover certain estate taxes paid to the Internal Revenue Service by the estate of Walter G. Stephenson upon the alleged wrongful assessment and collection of the tax by the District Director.

The question presented is whether the value of certain real estate which the decedent, Walter G. Stephenson, transferred to his wife should be included in the decedent's gross estate under 26 U.S. C.A. § 2036 (Supp.1964) which provides for such inclusion of property transferred by a decedent for less than an adequate monetary consideration when the transferor "has retained for his life * * * the possession or enjoyment of * * * the property * * *."

The case was heard on the defendant's motion for summary judgment, there being no real dispute as to the facts, although there is considerable dispute as to the interpretation thereof.

Walter G. Stephenson, decedent, and the plaintiff, Mrs. Elizabeth W. Stephenson, his surviving spouse, were married in 1937. In 1938 they moved into the house of Mr. Stephenson's mother, Mrs. Elizabeth G. Stephenson, in Roanoke, Virginia. There they continued to live together until the death of Mr. Stephenson in 1960. From 1938 until her death in 1955 Mr. Stephenson's mother was infirm and at some time during that period became totally incapacitated. She required constant care. This care was rendered by the decedent's wife until the mother-in-law's death.

Following his mother's death, Mr. Stephenson informed his wife that since she had never had a true home of her own he would provide one for her. The testimony of Mrs. Stephenson, as set out in her deposition, indicates that her mother-in-law had been the "boss" of the household. Mrs. Stephenson, after looking at prospective homes and home sites, decided that she would prefer to remain in the homestead where she and the decedent had lived since 1938.

Mrs. Elizabeth G. Stephenson, by the terms of her will, devised her estate in four equal shares to her three sons and to the descendants *per stirpes* of a deceased fourth son. The decedent and one brother, co-executors of the estate, petitioned the Hustings Court of the City of Roanoke to approve a sale by the executors of the mother's house to the decedent and, at the direction of the decedent, the title to the property was conveyed to his wife.[1] The house was as-

---

1. "THIS DEED made this the 24 day of June, 1955, by and between RICHARD C. STEPHENSON and WALTER G. STEPHENSON, co-executors of the estate of Elizabeth G. Stephenson, deceased, parties of the first part hereinafter called 'Grantors', WALTER G. STEPHENSON, in his own right, party of the second part, and ELIZABETH WINGFIELD STEPHENSON, party of the third part hereinafter called 'Grantee',

WITNESSETH:

"That pursuant to decree entered June 21, 1955 in the Hustings Court of the

sessed at $50,000 and sold for that price, for which decedent paid $37,500 in cash and charged his interest in the estate with $12,500, his distributive share under his mother's will of the value of the house.

The uncontroverted testimony of Mrs. Stephenson is that her husband gave her

> City of Roanoke, Virginia, in the chancery cause therein pending under the short style of Richard C. Stephenson, co-executor under the will of Elizabeth G. Stephenson, deceased, vs. The First National Exchange Bank of Roanoke, trustee and others, and in consideration of the sum of $50,000.00 paid by Walter G. Stephenson as provided in said decree, of which $37,500.00 was cash in hand paid to Grantors by him, receipt acknowledged; Grantors do convey with SPECIAL WARRANTY OF TITLE unto Grantee all that certain tract or parcel of land in the City of Roanoke, Virginia, described as follows:
>
> * * * * *
>
> "To have and to hold unto Grantee in fee simple with all appurtenances thereunto belonging.
>
> "Walter G. Stephenson further unites herein to evidence the fact that he, in consideration of love and affection, in writing requested that the above conveyance be made direct to said Grantee (his wife) as a gift and to convey to her such interest in said land as he in his own right may have as the result of his paying therefor."

2. The following is quoted from the deposition of Mrs. Elizabeth W. Stephenson taken June 25, 1964. Questions by Mr. Robert White, Attorney, Department of Justice:

"Q. Now, the third group of documents that we asked you to produce, Mrs. Stephenson, 'are contracts and documents of similar import executed by and between yourself and your late husband and other parties with respect to his right to continue to use, possess and enjoy the property at 2713 Avenham Avenue during and after 1955'.

"A. There were not contracts.

"Q. No written instruments of any sort?

"A. Or oral.

"Q. All right.

"A. He gave it to me; he said 'with love and affection'.

"Q. Okay.

"A. He even said that I could put him out if I wanted to."

P.8, Deposition of Mrs. Elizabeth W. Stephenson.

the house, in consideration of love and affection, as a reward for the devoted care she rendered to his mother during the mother's long incapacitation and because she had lived for seventeen years under his mother's roof in a role other than that of chatelaine.[2]

* * * * *

"A. No, I was not working during that time. I was working but I lived with his mother who was quite elderly—

"Q. Yes, ma'am.

"A. —and needed an awful lot of care, so I lived there for seventeen of our eighteen years of married life.

"Q. You mean in—

"A. She was living with us.

"Q. I see.

"A. She was so-called the boss of the house, and I had to remain in the background and run things as best I could.

"Q. Yes, ma'am.

"A. And that was one reason that he appreciated what I had done and he wanted to show his appreciation, because I had never been able to live my own life really."

Pp. 11–12, Deposition of Mrs. Elizabeth W. Stephenson.

* * * * *

"A. Yes. She had been the boss all the time, all the way through; if I even wanted a little railing put across the porch when the children were little I couldn't have it done."

P.20, Deposition of Mrs. Elizabeth W. Stephenson.

* * * * *

"Q. Okay. Now when your husband conveyed this property to you was there a discussion between yourself and him with respect to whether he was to be privileged to live in the premises?

"A. No.

"Q. It was just understood between you that he was going to continue to live there?

"A. Well, I hoped he wasn't going to walk out on me.

"Q. Well, was there an understanding between you—

"A. No.

"Q. —to that effect?

"A. No, it was not discussed. He brought the Deed in and he said, 'It's your house and God knows if anybody ever deserved one, you do'.

"He said, 'It's yours to do with as you choose, you can even put me out if you wish'."

Pp. 15–16, Deposition of Mrs. Elizabeth W. Stephenson.

After the transfer of the house to Mrs. Stephenson and until Mr. Stephenson's death in 1960 the decedent and his wife continued to live there under the same arrangement as before. The only changes were that Mrs. Stephenson was in charge of "running" the household. Decedent continued to pay the bills and to maintain the house as he had done for some time before his mother's death when the mother owned the house. It appears from the deposition that during her lifetime the mother contributed partially to the cost of running the house but the amount is indeterminable.

The government contends that, based on the foregoing facts, the transfer of the house comes under 26 U.S.C.A. § 2036 (Supp.1964)[3] and therefore, for estate tax purposes, the house is included in the decedent's gross estate. The government alleges that Mr. Stephenson retained the use, possession and enjoyment of the property, even though transferred to his wife, for the period of his life.

The plaintiffs contend that the transfer was in good faith, complete, absolute and unconditional.[4] Further it is alleged that no agreement or understanding, express or implied was made as between husband and wife with respect to retention of the husband's possession or enjoyment of or right to income from the property. Therefore, it should not be included in the decedent's gross estate for estate tax purposes.

■ It seems clear in Virginia that, under the 1955 deed to her, Mrs. Elizabeth W. Stephenson's ownership of the house was absolute, free and clear of any legal rights of her husband.[5] Mr. Stephenson, therefore, retained no legal rights in the property. This is not contested. What the government alleges is that he retained the use, possession and enjoyment of the house not through any legal right but in actual practice by continuing to live there in the same manner as he had before his mother's death.

An excellent discussion of the history of Section 2036, both legislative and judicial, and recent developments thereunder is contained in Estate of McNichol v. Commissioner, 265 F.2d 667 (3d Cir. 1959) and in an article in The Tax Counselor's Quarterly.[6] Without belaboring the authorities adduced in the above

---

\* \* \* \* \*

"Q. I presume you'd say it was contemplated at the time that he gave you the property that he would stay in the premises with you and live with you just as you had done before?

"A. I don't know how you'd say 'contemplated,' it wasn't mentioned.

"Q. Well, I mean that was the understanding that you had without saying anything, you knew that, is that right?

"A. I hoped he contemplated staying there.

"Q. Well, he did by his actions?

"A. We were a close family, sir.

"Q. Yes. Would you say that this was an implied understanding between yourself and your husband?

"A. No, he was doing it because he felt I had been denied a normal home life really during our entire married life, and he wanted to try to make up to me and show his appreciation for what I had done for his mother."

P.18, Deposition of Mrs. Elizabeth W. Stephenson.

3. "§ 2036. Transfers with retained life estate

"(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or \* \* \*."

4. See copy of the deed reproduced in part at note 1.

5. Annot., 30 A.L.R. 1059, citing, inter alia, Irvine v. Greever, 32 Grat. (73 Va.) 411 (1879), and other Virginia cases to the same effect.

6. Markovits, The Fate of Inter Vivos Transfers Under Internal Revenue Code Section 2036, 7 The Tax Counselor's Quarterly 395 (1963).

citations and urged by the parties, some discussion of the salient cases is necessary.

Until 1949 courts were loathe to include in decedents' gross estates property transferred inter vivos out of decedents' possession but in which they retained some interest. But in 1949 the Supreme Court repudiated this general attitude and set out broad standards of inclusion for such transferred property. That case, Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949), is urged as authority for the government. There the decedent transferred, without power to alter, amend or revoke, certain stocks to a trust, but required the trustee to pay to him the income for life. The court said, with respect to general policy, at 645, 69 S. Ct. at 329:

"[A]n estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no *right* to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies." (Emphasis supplied)

This case's rationale is adapted to the specific fact of a clear retention of income—a right to the income from the stock. The language is clear; there must be a *right*. Decedent Stephenson had no right to possess or to enjoy the house. The transfer was out and out and was not affected by his life or death.

Also cited by the government to support its contention is the Harter case.[7] There the husband executed to his wife a deed for real estate but did not record it until fifteen years later when he was on his death bed. During his lifetime the husband treated the property as his, taking depreciation and noting income therefrom on his separate tax return from 1941 to 1947. The court found that even though he had no right to the income he had agreed to receive it and in fact did. The express language of the court indicated the grounds for the finding. At page 1966 the court stated:

"Under the clearly apparent facts in this case the decedent retained what amounted to a life interest in the property, and the property falls within his gross estate under the provisions of Section 811(c) (1) (B)."[8]

This, too, is a clear case where the decedent in fact retained the income from and the right to take depreciation on the property. Walter Stephenson retained no such interest.

The Church case doctrine was followed by the McNichol case, which is strongly relied on by the government.[9] In McNichol the decedent executed general warranty deeds for real property to his children as grantees. The decedent, however, made an oral agreement with his children that all of the income from the transferred realty would be paid to him during his lifetime. He reported on his income tax returns not only the income but also the depreciation on the property improvements. Both the Tax Court and the Court of Appeals rejected the narrow argument that the agreement reserving the income must be under the instrument of transfer. The Court of Appeals went on to discuss the meaning of "possession and enjoyment" as affected by the statute. Judge Steel said, at pp. 671, 673:

7. Estate of Harter v. United States, 48 AFTR 1964 (N.D.Okla.1954).

8. 1939 Predecessor to Section 2036.

9. Estate of McNichol v. Commissioner, 29 T.C. 1179 (1958), aff'd 265 F.2d 667 (3d Cir. 1959), cert. denied 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959).

"The conclusion is irresistible, that the petitioners' decedent 'enjoyed' the properties until he died. If, as was said in [Church] * * * the most valuable property attribute of stocks is their income, it is no less true that one of the most valuable incidents of ownership of income-producing real estate is the rent which it yields. He who receives the rent in fact enjoys the property. Enjoyment as used in the death tax statute is not a term of art, but is synonymous with substantial present economic benefit.

* * * * *

"But as we read the decision [Church] its bite goes deeper; and the opinion constitutes a sweeping and forthright declaration that technical concepts pertaining to the law of conveyancing cannot be used as a shield against the impact of death taxes when in fact possession or enjoyment of the property by the transferor—and more particularly his enjoyment of the income from the property—ceases only with his death."

The McNichol language goes quite far in broadening the scope of the coverage under Section 2036 of inter vivos transfers. But it must be remembered that the Court was deciding McNichol on the facts of that case which were clear and damaging to the taxpayer. The decedent had reserved by agreement an income from the property. In both McNichol and Greene [10] the test seems to be one of economic benefit—income paid to the transferor for life.

It must also be remembered that the Court in McNichol limited that decision to the fact of the existence of an agreement. At page 671, note 6, the Court said:

"We intimate no opinion as to whether we would have followed these decisions if, in the case before us, the decedent had received the rents following the transfer without an agreement with his children that he might do so."

The government also cites Estate of Skinner v. United States [11] in support of its contention. There the settlor of a trust gave sole and absolute discretion to the trustees, a bank and settlor's attorney, to pay the income to the settlor or other beneficiaries. The trustees paid all of the income to the settlor. The district judge, recognizing the authority of McNichol in his circuit, felt that it controlled situations where settlors of trusts received uninterrupted income from the trust when some agreement to that effect existed. But the judge carefully noted the court's admonition in McNichol that it ventured no opinion on similar facts except that there had been no prior agreement. Expressing doubt that an agreement was necessary to establish retention in that situation, Judge Layton, nevertheless, found from the facts in the case before him, although sketchy and tenuous, that "the necessary prearrangement between settlor and trustee can be inferred from the evidence in this case." [12]

Judge Layton, however, carefully qualified his holding at page 730 as follows:

"The holding here does not necessarily cover facts where, in the exercise of the trustee's 'discretion', the settlor has received the entire income for life but there is no evidence from which any prearrangement can be inferred; or where the settlor has received only a part of the income from the trust property, and at irregular intervals and in irregular amounts; or under any other circumstances in which the election of the trustee to pay income regularly to the settlor apparently

10. Greene v. United States, 237 F.2d 848 (7th Cir. 1956) held the trust in decedent's gross estate as the beneficiaries were bound under contract to pay for life the income to the settlor.

11. 197 F.Supp. 726 (E.D.Pa.1961), aff'd, 316 F.2d 517 (3d Cir. 1963).

12. 197 F.Supp. 729.

was not foreordained at the time of the execution of the trust."

■■ Thus where the benefit accruing to the transferor from the property transferred is the result of an inferred agreement to that effect, the property should be included in the transferor's gross estate at his death. I do not find from the evidence in the case before me any inferred agreement on the part of Mr. Stephenson to retain the possession or enjoyment of the transferred property.[13] In fact, the contrary is shown by Mr. Stephenson's statement quoted above that "you can even put me out if you wish".

The plaintiff cites three cases in support of its position; two of which predate the government's line of supporting cases and one of which predates all but the Church opinion.

In Burr v. Commissioner,[14] the decedent's wife desired a country house to such a degree that she intended to purchase one for herself. Using some of his wife's funds and supplying the remaining two-thirds from his own funds, the decedent purchased the house in his wife's name. Being a country home, the decedent used it only part time, spending much of his time in his city apartment. The Tax Court found as stated on page 1062:

> "The position of respondent is that the decedent retained the possession or enjoyment of this property until his death. He cites no authority to support his argument. His contention is that the decedent's occupancy of the premises as a resident is sufficient to bring the transfers within the statute. It is true that the decedent and his wife used the property as a summer home and to that extent he enjoyed the premises. The gifts were complete and after they were made, the donee had title to the real property and chattels. The decedent retained no interest of any kind in

the property and such enjoyment he had of his gifts was at the sufferance of his wife and not because of any rights he possessed in the property."

Not so clear as Burr, but nevertheless related to the question at hand, is the case of Scheid v. Commissioner.[15] In this case decedent gave certain gifts to his wife out of the income from which she paid household expenses. The Court found that, since there was no obligation on the part of the wife to pay these expenses, and even though such payments accrued to the benefit of the decedent, the value of this "retained enjoyment" could not be included in decedent's estate for tax purposes. The government argued then, as it does now, that the test under the statute is whether he did, in fact, retain the enjoyment of the gift he gave in the sense that value from it accrued to his benefit. The Court found that he did not.

The thrust of these two cases is somewhat blunted by the chronologically subsequent decisions in Church and the cases following it. But, as I have already noted, these opinions do not deal with the situation presented to me. Burr is much closer to the facts here than any of the cases cited in favor of the government.

Two years after the Church decision the Tax Court handed down another case involving the transfer of a house from a husband to his wife. In Wier's Estate v. Commissioner,[16] the decedent had conveyed his community property interest in the homestead to his wife and continued to live in the house for some years until his death. The Internal Revenue Service attempted to include in the decedent's taxable estate one-half of the value of the homestead under the retained possession or enjoyment theory. Citing Texas law, which appears to have the same effect as Virginia's in vesting complete

---

13. See note 2.

14. 4 T.C.M. 1054 (1945).

15. 6 T.C.M. 1271 (1947).

16. 17 T.C. 409 (1951).

interest in the wife in such transfers, the Court said at page 422:

> "We hold that the decedent retained no interest whatever in the homestead property which he conveyed to Mrs. Wier by warranty deed * *."

The Wier case seems closely related to the situation here. It is certainly closer factually than those cases submitted by the government as persuasive for its view.

In each of the cases urged by the government, as set out above, there is a specific and tangible retained benefit—income from the transferred property, either real or personal. In each of the government's cases the courts found agreements relating to retention, either implied, inferred or apparent. Although there is some intimation that agreements or prearrangements are not necessary to a finding of retained enjoyment or possession, none of these case so hold.

With reference to the cases cited by the government, it is very interesting to note the observation of Markovits in his article on the subject of such transfers and their inclusion under Section 2036:

> "It should be stressed that all of the recent decisions have determined cases in which the fact patterns were clear and damaging against taxpayers, and where the required agreement to allow the grantor to retain what amounted to a statutory life estate could be proved or readily inferred." [17]

Markovits points out that the exact issue before me has not yet come under judicial scrutiny.[18] But recently, in October, 1964, the question of a transfer of a residence from a decedent to his wife prior to his death wherein he resided with her for life came before a district court in Tennessee. Judge Brown, in refusing the government's motion for summary judgment, ruled that the mere fact of the husband's living in the residence after its transfer to his wife was "of itself" not sufficient basis for inclusion in the gross estate under Section 2036.[19] As to the finding of an agreement, either express or implied, the trier of fact, a jury, found that there was no such agreement.

 In the absence of any agreement, express or implied, between Mr. and Mrs. Stephenson as to retention of any possession or enjoyment by the decedent, I must deny the government's motion for summary judgment. Also, agreeing with Judge Brown, the mere fact that the decedent lived in the house after he transferred it to his wife is neither sufficient evidence to infer an agreement nor is it sufficient to satisfy the requirement of retention of possession or enjoyment as set out by Section 2036.

---

17. Markovits, supra, at 401.

18. At least as of 1963, the date of publication.

19. United States v. Estate of Ladd, Civil 5064 (W.D.Tenn., October 26, 1964), unreported opinion.