**Jane C. GUYNN, Executrix of the Estate of Vena E. Calvert, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 68–C–13–A.

United States District Court, W. D. Virginia, Abingdon Division.

Feb. 12, 1970.

John Y. Merrill, Washington, D. C., George M. Warren, Jr., Bristol, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant, Johnnie M. Walters, Asst. Atty. Gen., Stanley F. Krysa, G. Thaddeus Williams, Attys., Dept. of Justice, Washington, D. C., on brief.

234

## OPINION

WIDENER, District Judge.

The plaintiff seeks to recover estate tax and interest paid after assessment by the Commissioner of Internal Revenue based on the following determination:

"It is determined that the value of a brick residence, located in Galax, Virginia, which was transferred to the decedent's daughter during decedent's lifetime is includable in her gross estate since the decedent retained possession or enjoyment of the property during her lifetime."

The sole issue is whether the gross estate of Vena E. Calvert, deceased, should include the value of an inter vivos gift of real estate made to her daughter, Jane C. Guynn, the decedent having occupied the real estate until her death. The Commissioner relies upon the following:

Title 26, U.S.C.A.

"Section 2036. TRANSFERS WITH RETAINED LIFE ESTATE (a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or * * *."

Vena E. Calvert died August 10, 1963. She was 81 years of age, having been born December 17, 1881. Prior to December, 1961, she was a resident of Denver, Colorado. On December 29, 1961, the decedent purchased a house and lot located in Galax, Virginia, paying the full purchase price with her personal funds. This property was located very close to the residence of decedent's daughter, Jane C. Guynn, who later qualified as executrix of her estate. A deed for the purchased property, dated December 29, 1961, was executed by the owners, Mr. and Mrs. R. L. Nelson, conveying same to the decedent; this deed was never recorded. The decedent wanted to make a gift of this property to her daughter, so approximately four months later, on May 2, 1962, another deed to the same property was executed by the former owners, Mr. and Mrs. R. L. Nelson, and the decedent, Vena E. Calvert, to the decedent's daughter, Jane C. Guynn; this deed was recorded two days later. The reason given for the manner in which this latter deed was executed was to save recording costs; otherwise, such costs would have to be paid for recording two deeds instead of one. A United States Gift Tax Return was prepared and filed by the decedent for the calendar year 1962. This return listed the real estate in question and certain corporate stocks, naming decedent's daughter as the beneficiary. The decedent occupied property from the date of the original purchase on December 29, 1961 until her death on August 10, 1963. During this period of time, decedent personally paid for $500.00 worth of improvements and repairs on the property and paid the real estate taxes. Only one year's real estate tax is involved since Virginia real estate taxes are payable on December 5th of each year. Until March, 1963, a few months before the fall which caused her death, decedent was very active, enjoyed good health, and traveled widely. Through the years, she had made many gifts to her daughter, and, in fact, gave her almost $15,000.00 worth of stock the same day she gave her the house. There is no evidence of an express or implied agreement between decedent and her daughter to the effect that decedent would continue to occupy the property during her lifetime.

The Commissioner contends that the mere fact of actual occupancy by the decedent during her lifetime is alone

sufficient to make effective the provisions of 26 U.S.C. § 2036, or, in the alternative, contends that the facts warrant a finding that an agreement existed between the decedent and her daughter for the mother's possession during her lifetime. This court does not subscribe to the Commissioner's first proposition. Further, it finds no previous case giving this interpretation to Section 2036.

The government relies on the reported cases of Commissioner of Internal Revenue v. Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949); Carpenter v. United States, 243 F.Supp. 993 (W.D. Okl.1965); Atkinson v. United States, 231 F.Supp. 933 (E.D.S.C.1964); Skinner's Estate v. United States, 316 F.2d 517 (3rd Cir. 1963); and McNichol's Estate v. Commissioner of Internal Revenue, 265 F.2d 667 (3rd Cir. 1959); and the unreported cases of Peck v. United States (M.D.Ga.1965) 65-2 U.S.T.C. para. 12,333, and Harter v. United States (N.D.Okl.1954) 55-1 U.S.T.C. para. 11,503, in addition to tax court cases, especially Estate of Linderme, 52 T.C. No. 305 (1969).

In all of the above cases, the common denominator was the existence in fact of an agreement between the donor and donee that the donor would retain the possession or enjoyment of the property or the right to the income from it. Indeed, in *Peck*, the issue of whether or not such agreement existed was presented to the jury which found in favor of the government. No case has been cited by the parties or found by the court in which the government has prevailed absent an agreement between the donor and donee, or a retention in the instrument of conveyance.

 In the instant case, the court finds as a fact that no such agreement, express or implied, existed.

An additional common denominator, as pointed out by *Linderme*, is that in each reported court case in which the statute has been applied there has been income involved (*Church*—dividends; *Carpenter*—royalties; *Atkinson*—divi-

dends; *Skinner*—dividends; and *McNichol's*—rent). While this may not be determinative, the cases are certainly a true reflection of human nature that we are much more likely to part with non-income producing property without strings attached, than we are from stocks, or bonds, or rental realty.

In *Linderme*, heavily relied upon by the government, the property was conveyed by quitclaim deed by a father to his three sons, one of whom kept the deed with their father's papers. The other two sons did not know of the deed until he died. No Federal Gift Tax Return was filed. The decedent continued to occupy the home alone and kept it up until he died about eight years later. After decedent's death, the home was sold and the proceeds of sale used to pay obligations of the estate. No effort was made to rent the home after decedent went to a nursing home, where he spent the last year and a half of his life.

The tax court found as a fact that:

"from the time of the transfer in 1956, until his death in 1964, decedent had an understanding pursuant to which he retained the exclusive use of the property in question."

The opinion again later recites:

" * * * beyond the mere existence of the family relationship and the mere occupancy of the premises, decedent did have an understanding whereby he retained the exclusive use of the residence until his death."

Thus, given the clear opportunity to find that mere occupancy and the family relationship were sufficient to include the property in the estate, the tax court declined to do so, and based its opinion on occupancy, relationship, and agreement.

The plaintiff relies on the reported cases of Stephenson v. United States, 238 F.Supp. 660 (W.D.Va.1965), Estate of Binkley v. United States, 358 F.2d 639 (3rd Cir. 1966), and Union Planters National Bank v. United States, 361 F. 2d 662 (6th Cir. 1966), plus the unreported case Diehl v. United States (W.D.

Tenn.1967) 21 A.F.T.R.2d 1607, and various tax court decisions.

■ In each of the reported court cases the decedent had purchased a home for his wife and had continued to live in the home with his wife until he died, in the meantime keeping up the property. The deeds to the wives were absolute, and no agreements to retain possession were found. In each case the finding was in favor of the taxpayer.

In *Diehl,* which is very nearly on all fours with the instant case, an aged father had conveyed his home to his son and daughter-in-law who had moved in with him, and the father continued to pay the household expenses. The son was not told of the gift of the house until after the deed was recorded. The court determined that no agreement to retain possession existed and found in favor of the taxpayer.

The government argues that the joint occupancy of husband and wife cannot be compared to the sole occupancy of the mother in the instant case. With this contention, the court is in complete disagreement. The relation of husband and wife is the closest known to human society. All transactions between them should be carefully scrutinized, and in some instances conveyances from one to the other are presumed to be fraudulent. See Atkinson v. Solenberger, 112 Va. 667, 72 S.E. 727 (1910). It is much more likely that a man will attempt to evade taxes by a gift to his wife, than a mother will by a gift to her daughter.

*Church* sets out the principle which must guide us here:

" * * * an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies." 335 U.S. 632, 645, 69 S.Ct. 322, 329.

■ After the transfer to her daughter, Vena E. Calvert had no present legal title in the property; she had no possible reversionary interest; and no right to possess or enjoy the property then or thereafter. The cases are clear that mere occupancy of the property conveyed, absent an agreement to retain the use, is not sufficient to bring the transfer within the purview of the statute. *Stephenson,* 238 F.Supp. p. 667.

One further thing should be noted. The clear language of the statute has been largely overlooked. Section 2036 contemplates the inclusion of the conveyed property in the gross estate if "* * * the decedent * * * made a transfer * * * *under which* he retained * * * the possession or enjoyment [of] * * * the property * * *" (Emphasis added).

*Church* did not discuss the words "under which", for the trust instrument on its face clearly retained the income for the donor. *McNichol's* held that it would not give literal effect to the words, but that they meant that "* * * the life interest must be retained in connection with or as an incident to the transfer." 265 F.2d 667, 670. The court is of opinion that the plain words of Congress are entitled to considerable consideration as they are written. But whether under the literal meaning of "under which", or the construction of *McNichol's,* the government cannot prevail here. The occupancy of Vena E. Calvert was not under the deed to her daughter, and was not in connection with, or as an incident of the transfer.

An order is this day entered in favor of the taxpayer consistent with this opinion.