**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUDITH BADGLEY,
  *Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
  *Defendant-Appellee.*

No. 18-16053

D.C. No.
4:17-cv-00877-HSG

OPINION

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted December 2, 2019
San Francisco, California

Filed April 28, 2020

Before: Carlos F. Lucero,* Consuelo M. Callahan,
and Bridget S. Bade, Circuit Judges.

Opinion by Judge Lucero

---

*The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Tax

The panel affirmed the district court's summary judgment in favor of the Internal Revenue Service, in an action challenging the inclusion of a grantor-retained annuity trust in a decedent's gross estate for purposes of the estate tax.

At issue in this appeal was whether, under 26 U.S.C. § 2036(a)(1), a grantor's interest in a grantor-retained annuity trust (GRAT) is a sufficient "string" that requires the property interest to be included in the gross estate.

After Donald Yoder's death, his wife, decedent Patricia Yoder, succeeded to his fifty-percent partnership interest in a family-run company. Decedent created a GRAT to transfer that partnership interest to her daughters, while decedent retained a right to an annuity paid from the GRAT for 15 years. Decedent died before the end of the 15-year annuity period. The estate tax return reported a total gross estate that included the GRAT's assets. The statutory executor of the estate, daughter Judith Badgley, filed a tax refund action in district court, asserting an overpayment resulting from the inclusion of the entire date-of-death value of the GRAT in the gross estate, and arguing that only the net present value of the unpaid annuity payments should have been included. The district court held that, because the decedent's retained annuity interest was both a retained right to income from and continued enjoyment of the property, the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

entire date-of-death value of the GRAT should be included in the gross estate.

The panel first rejected appellant's argument that, because 26 U.S.C. § 2036(a)(1) does not expressly mention annuities, the full value of decedent's GRAT cannot be included in the gross estate. The panel explained that in § 2036(a)(1), Congress set forth three "strings" tying a grantor to property, and instructed that we look to the result—possession, enjoyment, or a right to income therefrom—rather than the form those strings take.

The panel next addressed whether the annuity flowing from a GRAT falls within the class intended to be treated as substitutes for wills by § 2036(a)(1). The panel held that it does; to avoid the force of § 2036(a), a grantor must completely divest herself of possession, enjoyment, and income from the property, and the beneficiaries' interest must take effect prior to the grantor's death. The panel concluded that when a grantor derives substantial present economic benefit from property, she retains the enjoyment of that property for purposes of § 2036(a)(1). Here, because decedent's annuity was a "substantial present economic benefit," it stemmed from a property interest placed in the GRAT, it reserved to decedent the enjoyment of that interest during her lifetime, and was not transferred to the beneficiaries before decedent's death, the annuity was required to be included in the GRAT's date-of-death value in the estate.

Finally, the panel addressed appellant's challenges to 26 C.F.R. § 20.2036-1(c)(2), which includes the formula the IRS uses to calculate the portion of the property includable under § 2036(a). The panel concluded that, even if this challenge were not waived by the cursory manner in which it was raised on appeal, it would not apply in this case.

**COUNSEL**

Paul Frederic Marx (argued), Rutan & Tucker LLP, Costa Mesa, California, for Plaintiff-Appellant.

Nathaniel S. Pollock (argued) and Teresa E. McLaughlin, Attorneys; Richard E. Zuckerman, Principal Deputy Assistant General; Tax Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

**OPINION**

LUCERO, Circuit Judge:

Thanks to Benjamin Franklin, death and taxes are inextricably linked in most Americans' minds as the only two things in this world that are certain. Thanks to the estate tax, certainty is not the only tie. For the duration of its existence, taxpayers have attempted to avoid the estate tax by utilizing a variety of legal mechanisms to transfer property during their lifetimes while holding onto the fruits of that property. In response to taxpayers' impulse to retain a legal interest in the property despite the transfer, Congress enacted what is now 26 U.S.C. § 2036(a).

At the most colloquial level, § 2036(a) stands for the proposition that if the taxpayer does not let property go, neither will the taxman. It delineates three criteria—possession, enjoyment, and a right to income—for determining when the connection between a grantor and property is sufficient to require the property's inclusion in the grantor's estate for purposes of the federal estate tax. § 2036(a)(1). Unless a taxpayer "absolutely, unequivocally, irrevocably, and without possible reservations, parts with" her possession of, enjoyment of, or a right to income from the property—leaving no "string" tying her to the property—property transferred inter vivos is included in a decedent's gross estate. *Comm'r v. Church's Estate*, 335 U.S. 632, 645 (1949); *see also Estate of McNichol v. Comm'r*, 265 F.2d 667, 670–73 (3d Cir. 1959).

Judith Badgley challenges the application of § 2036(a) by the Internal Revenue Service ("IRS") to her mother's grantor-retained annuity trust ("GRAT"). The district court granted summary judgment in favor of the IRS. To resolve this appeal, we must determine whether under § 2036(a)(1),

a grantor's interest in a GRAT is a sufficient "string" that requires the property interest to be included in a gross estate. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm, holding that because the grantor retains enjoyment of a GRAT, it is properly included in the gross estate.

# I

A GRAT allows a grantor to transfer property to a beneficiary while retaining the right to an annuity from the transferred property. John F. Bergner, 44 U. Miami L. Ctr. on Est. Plan. ¶ 401.1 (2019). The grantor creates an irrevocable grantor trust for a fixed term of years, transfers assets into it, and designates trustees and beneficiaries. She receives an annuity for a specified term of years. *Id.* At the end of the term, the GRAT dissolves and the property is transferred to the beneficiaries. Howard Zaritsky, *Tax Planning for Family Wealth Transfers During Life: Analysis with Forms*, ¶ 12.06(1) (5th ed. 2013 & Supp. 2020).

At the time of transfer into a GRAT, property is subject to a gift tax on the present value of the GRAT's remainder interest, valued according to the methodology in 26 U.S.C. § 7520. *Id.* A reduction in the transferred property's gift value for tax purposes is permitted if the recipient is a family member and the transferor or a family member retains a "qualified interest" in the property, which includes "any interest which consists of the right to receive fixed amounts payable not less frequently than annually." 26 U.S.C. § 2702. For a GRAT, this means that the value of the transferred property subject to the gift tax is lessened by the amount of the retained annuity. Depending on the structure of the GRAT, it is possible to eliminate the applicable gift tax entirely by modifying the trust term and annuity amount to zero out any remainder. Zaritsky, *supra*, ¶ 12.06(3)(c)(i). This permits assets to be transferred to beneficiaries at the

termination of a GRAT's term without the imposition of a gift tax. *Id.* Moreover, if the term of a GRAT ends before the grantor dies, the property is not included in the grantor's gross estate for purposes of the estate tax. *See* § 2036(a).

In this case, Patricia Yoder ("Decedent") was married to Donald Yoder, a fifty-percent partner in Y&Y Company, a family-run general partnership and property development company in southern California. After Mr. Yoder's death in 1990, Decedent succeeded to his fifty-percent partnership interest. In February 1998, Decedent created a GRAT to transfer the partnership interest in Y&Y, valued at $2,418,075, to her daughters, Judith Badgley and Pamela Yoder. The interest was the only property placed in the GRAT. Decedent retained a right to an annuity of $302,259 paid from the GRAT for fifteen years, equivalent to 12.5 percent of the date-of-gift value of the partnership interest. In April 1999, Decedent filed a gift tax return reporting the gift to her daughters of the GRAT's remainder interest and paid a gift tax of $180,606.

Decedent was both the grantor and trustee of the GRAT, with her daughters serving as special trustees. The GRAT instrument provided that the special trustees could make additional distributions to Decedent if requested. At the end of the fifteen-year annuity term or upon her death, whichever occurred earlier, the GRAT's corpus would pass to her daughters. Decedent explained to them that if she did not outlive the fifteen-year annuity term, the partnership interest "would probably go back into her estate" for tax purposes.

From 2002 to 2012, Y&Y reported income ranging from $994,642 to $1,325,478.[1]   Half of Y&Y's income was distributed to the GRAT.  Y&Y made cash distributions to the GRAT ranging from $435,400 to $730,000.  Although neither party identified the source of the annuity payments in a given year, these cash distributions were sufficient to pay the annuity without decreasing the value of the partnership interest or requiring the sale of any of Y&Y's holdings.

Decedent died on November 2, 2012, shortly before the fifteen-year annuity period expired.  The estate tax return reported a total gross estate of $36,829,057.  This included the GRAT's assets, which consisted of the Y&Y partnership interest (valued at $6,409,000); $1,384,558 held in a bank account; and $3,193,471 held in an investment account.  The estate paid $11,187,475 in taxes.

In 2016, Badgley, in her capacity as statutory executor of Decedent's estate, sought a refund of an overpayment of Decedent's estate tax in the amount of $3,810,004.  She asserted that the overpayment resulted from the inclusion of the entire date-of-death value of the GRAT in Decedent's gross estate and argued that only the net present value of the unpaid annuity payments should have been included.

The IRS did not act on Badgley's refund claim within six months, and Badgley filed a refund action in district court, as authorized by 26 U.S.C. § 6532(a)(1).  Both parties filed motions for summary judgment.  The district court denied Badgley's motion and granted the government's cross-motion.  It held that Decedent's retained annuity interest was

---

[1] The parties have not produced evidence of Y&Y's income before 2002.

both a retained right to income from and continued enjoyment of the property. Both "strings" tied the GRAT to Decedent, requiring inclusion of the entire date-of-death value of the GRAT in her gross estate.[2] The court also concluded that 26 C.F.R. § 20.2036-1(c)(2), the Treasury regulation construing § 2036(a)(1) to apply to GRATs, was valid. Badgley timely appealed.

## II

We review a district court's order granting or denying summary judgment de novo, examining all evidence in the light most favorable to the non-moving party. *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 859 (9th Cir. 2011). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial," *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999) (en banc), and whether the district court "applied the relevant substantive law," *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339–40 (9th Cir. 1989).

Section 2036(a) provides:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not

---

[2] 26 C.F.R. § 20.2036-1(c)(2) caps this amount at the total value of the GRAT's corpus on the date of death rather than the value otherwise calculated under the formula provided in the section.

> ascertainable without reference to his death
> or for any period which does not in fact end
> before his death—
>
>> (1) the possession or enjoyment of, or the
>> right to the income from, the
>> property . . . .

*Id.* "The general purpose of the statute [i]s to include in a decedent's gross estate transfers that are essentially testamentary—*i.e.*, transfers which leave the transferor a significant interest in or control over the property transferred during his lifetime." *United States v. Estate of Grace*, 395 U.S. 316, 320 (1969).[3]  To this end, a decedent's gross estate includes the value of property transferred while the decedent was alive if the decedent retained possession of, enjoyment of, or the right to income from the property. These three factors—possession, enjoyment, and income— are referred to as "strings" tying the transferor to the property despite the transfer.  *See, e.g.*, *United States v. Brown*, 134 F.2d 372, 373 (9th Cir. 1943).

## A

At the outset, we address Badgley's argument that because § 2036(a) does not include the term "annuity," it unambiguously does not apply to annuities. In § 2036(a)(1), Congress set forth the three "strings" tying a grantor to property, but did not specify which property interests qualify.  One could imagine a version of the statute that

---

[3] *Estate of Grace* addressed a prior version of § 2036(a), § 811(c) of the Internal Revenue Code of 1939.  Section 2036(a) has been amended since its original passage in 1916, but Badgley does not argue that these amendments are substantive.

includes property in the grantor's gross estate if the decedent "retained an annuity drawn from the property" or "lived on the property for more than half a year." But Congress did not include such specifications. Instead, it instructed us to look to the result—possession, enjoyment, or a right to income therefrom—rather than the form those strings take. *See Estate of McNichol*, 265 F.2d at 673 ("[T]he criterion for determining whether property transferred inter vivos is subject to a death tax is the effect of the transfer . . . .").

The fact that § 2036(a)(1) does not include the term "annuity" does not exclude annuities from its ambit. This is consistent with the decisions of the Supreme Court and our sibling circuits, which have concluded that interests such as reversionary interests, the power of appointment, and rent— also not expressly listed in § 2036(a)—nevertheless fall into one of the three categories. *See, e.g.*, *Estate of Spiegel v. Comm'r*, 335 U.S. 701, 705 (1949) (potential reversionary interest in property is possession or enjoyment); *Fid.-Phila. Tr. Co. v. Rothensies*, 324 U.S. 108, 111 (1945) (beneficiaries' estates "took effect in enjoyment" only at transferor's death because she held power of appointment); *Estate of McNichol*, 265 F.2d at 671 (rent from property is enjoyment).

As far back as the 1940s, the Supreme Court rejected the proposition that taxpayers could "escape the force of this section by hiding behind the legal niceties contained in devices and forms created by conveyances." *Church's Estate*, 335 U.S. at 646 (quotation omitted); *see also Fid.-Phila.*, 324 U.S. at 111 ("The application of this tax does not depend upon elusive and subtle casuistries." (quotation omitted)). We reject Badgley's argument that because § 2036(a)(1) does not expressly mention annuities, the full

value of Decedent's GRAT cannot be included in the gross estate.

## B

We turn to the main issue:  whether the annuity flowing from a GRAT "fall[s] . . . within the class intended to be treated as substitutes for wills" by § 2036(a)(1).  *Church's Estate*, 335 U.S. at 646.  We need only look to Supreme Court precedent construing the statute to conclude that it does.   To avoid the force of § 2036(a), a grantor must "absolutely,      unequivocally,      and     without     possible reservations, part[] with all of his title and all of his possession and all of his enjoyment of the transferred property . . . [and the transfer] must be unaffected by whether the grantor lives or dies."  *Id.* at 645–46.  Thus, § 2036(a)(1) focuses on both the grantor, who must completely divest herself of possession, enjoyment, and income, and the beneficiaries, whose interest must "take effect" prior to the grantor's death.  *See id.* at 637.

From the passage of the first federal estate tax in 1916 until the Supreme Court decided *May v. Heiner*, 281 U.S. 238 (1930), the Treasury Department treated trust transfers that distributed the corpus at the grantor's death but reserved a life income to the grantor as falling within the sweep of § 2036(a)'s precursors.  *See Church's Estate*, 335 U.S. at 639.  In *May*, however, the Court "upset[] the century-old historic meaning and the long standing Treasury interpretation of the 'possession and enjoyment' clause" by holding that "because legal title had passed from the settlor irrevocably when the trust was executed," the retention of income did not constitute an interest in the transferred property.  *Id.* at 639–41.  Congress quickly corrected the Court, amending the statute to clarify that retention of any possession, enjoyment, or income from the transferred

property rendered the property includable. *See id.* at 639–40 (discussing congressional action following *May*, 281 U.S. at 243); H.R.J. Res. 529, 71st Cong. (1931) (enacted).

The Court deviated from *May*'s holding when it addressed a similar question in *Helvering v. Hallock*, 309 U.S. 106 (1940). *Hallock* held that transfers of property with retained reversionary interests made the transfers contingent upon the decedent's death and thus were "too much akin to testamentary dispositions not to be subjected to the same" estate tax. *Id.* at 112.

In *Church's Estate*, the Court explicitly overruled *May*, holding that retention of the right to income for life from transferred stocks constituted possession or enjoyment of the stocks. 335 U.S. at 637, 641, 644–45. Looking to the historical meaning of "possession or enjoyment," the Court noted its "return[] to the interpretation of the 'possession or enjoyment' section under which an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property."[4] *Id.* at 637–39, 645.

Further, "[i]t is well settled that the terms 'enjoy' and 'enjoyment,' as used in various estate tax statutes, are not

---

[4] Following *Church's Estate*, Congress passed the Technical Changes Act, which proscribed *retroactive* application of *Church's Estate* to any transfers made prior to March 4, 1931 by a decedent who died prior to January 1, 1950, thereby exempting transfers made in reliance on *May*. *See Comm'r v. Estate of Canfield*, 306 F.2d 1, 4–6 (2d Cir. 1962). In 1953, it extended the exemption to all transfers completed before March 4, 1931, regardless of the decedent's date of death. *See id.* at 5.

terms of art, but connote substantial present economic benefit rather than technical vesting of title or estates." *United States v. Byrum*, 408 U.S. 125, 145 (1972) (quotations omitted); *see also Comm'r v. Estate of Holmes*, 326 U.S. 480, 486 (1945) (same). In *Estate of McNichol*, the Third Circuit held that rent from income-producing real estate constituted enjoyment. 265 F.2d at 671. McNichol had transferred real estate to his children, with an oral agreement to retain the rent from the property. *Id.* at 669. Concluding that "[h]e who receives the rent in fact enjoys the property," the court held that "[t]he conclusion is irresistible that the petitioners' decedent 'enjoyed' the properties until he died" because "one of the most valuable incidents of income-producing real estate is the rent which it yields." *Id.* at 671, 673; *see also Estate of Stewart v. Comm'r*, 617 F.3d 148, 154–55 (2d Cir. 2010) (holding that when determining who retains "substantial present economic benefit," "[a]ll we have to do is follow the money"); *cf. Greene v. United States*, 237 F.2d 848, 853 (7th Cir. 1956) (holding beneficiaries who received income from securities and then paid it to decedent did not have beneficial possession or enjoyment because they "were neither able to retain nor to enjoy the income from the securities").

In *Commissioner v. Clise*, 122 F.2d 998 (9th Cir. 1941), involving annuity contracts outside of the trust context, we concluded that when a grantor retained the "economic benefit" of annuity payments, she retained enjoyment of the property. *Id.* at 999, 1003–04. Because the annuities went to Clise for her lifetime and to a designated second annuitant upon her death, "[t]he practical effect of the annuity contracts was to reserve to [her] the enjoyment of the property transferred and to postpone the fruition of the economic benefits thereof to the second annuitants until her death." *Id.* at 1004; *see also Forster v. Sauber*, 249 F.2d

379, 380 (7th Cir. 1957) (holding retained annuity includable in gross estate because "grantor has retained the economic enjoyment of the contracts for life"); *Mearkle's Estate v. Comm'r*, 129 F.2d 386, 388 (3d Cir. 1942) (holding annuity contracts includable because their practical effect was "to reserve to the annuitant the enjoyment of the property transferred and to postpone the fruition of the economic benefits to the second annuitant until after the death of the first").

We conclude that when a grantor derives substantial present economic benefit from property, she retains the enjoyment of the property for purposes of § 2036(a)(1).[5] As in *Clise*, Decedent's annuity was a "substantial present economic benefit," requiring inclusion of the GRAT's date-of-death value in her estate. She received $302,259 per year for fifteen years through the annuity. Moreover, because the partnership was the only property placed in the GRAT, the annuity stemmed from that property interest. As "something of value enjoyed by her," *Bayliss v. United States*, 326 F.2d 458, 461 (4th Cir. 1964), the annuity reserved to Decedent the enjoyment of the partnership interest during her lifetime. And because Decedent died before the termination of the GRAT, the property was not transferred to its beneficiaries before her death—and remained tied to her by the string she created.

---

[5] We reject Badgley's argument that "economic benefit" means "income." Certainly, income is one type of economic benefit, *see, e.g.*, *Church's Estate*, 335 U.S. at 644–45, but it is not the sole form that economic benefit may take.

## C

Badgley argues that the Supreme Court has disavowed the "substance-over-form" approach described above in favor of a plain-language method of statutory interpretation. She cites *Byrum* as a more recent Supreme Court decision addressing § 2036(a). But *Byrum* itself states that enjoyment connotes substantial present economic benefit. 408 U.S. at 145.

We agree with Badgley that statutory interpretation begins with the plain meaning of the statute at the time of its drafting. *See Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018). Yet "[w]hile every statute's meaning is fixed at the time of enactment, new applications may arise in light of changes in the world," and courts must determine whether new applications fit within the statute's meaning. *Id.* at 2074 (alterations omitted). That precisely is what we do here: we begin with the text of § 2036(a)(1) and determine whether, within the statute's meaning, a grantor's retained interest in a GRAT constitutes enjoyment.

The Court's "substance over form" approach is entirely consistent with this method of statutory interpretation. Section 2036(a)(1) provides that property is included in a gross estate if the decedent retained possession or enjoyment of the property or the right to income from it. In applying the statute, we focus on the substance of the retained interest. Labels are not dispositive. *See Church's Estate*, 335 U.S. at 644 ("However we label the device if it is but a means by which the gift is rendered incomplete until the donor's death the possession or enjoyment provision applies." (quotation and alteration omitted)). "[T]echnical concepts pertaining to the law of conveyancing cannot be used as a shield against the impact of death taxes when in fact possession or

enjoyment of the property by the transferor . . . ceases only with his death." *Estate of McNichol*, 265 F.2d at 673.

## D

Badgley makes much of the distinction between a trust's income and its principal. She argues that because the GRAT's principal exceeded the annuity for several years of the fifteen-year term, the annuity could have been drawn from prior year distributions from the partnership and the interest earned on those distributions. We decline her invitation to speculate about the precise part of the trust from which Decedent's annuity could have been drawn.

Further, such an inquiry is irrelevant. Badgley argues that Decedent's decision not to use the word "income" in the GRAT document should permit her to avoid estate tax responsibilities. But as noted above, when determining whether a decedent has retained a string under § 2036(a), our charge is to look at the substance of the arrangement, rather than at formalities. *See, e.g.*, *Church's Estate*, 335 U.S. at 644. The only property in the GRAT was the partnership interest, and the annuity was drawn from the GRAT. Thus, any money received by Decedent as part of the annuity came from the partnership interest, and, as discussed above, conveyed substantial economic benefit to Decedent. The GRAT corpus was within § 2036(a)(1)'s reach.[6]

---

[6] Because we conclude that in any event, Decedent's annuity constituted enjoyment under § 2036(a)(1), we do not address the parties' arguments whether Decedent retained a right to income from the property. We also do not reach the government's argument that the GRAT was part of the gross estate because Decedent continued to exercise managerial duties for and retain tax benefits from the partnership after creating the GRAT.

**E**

Inclusion of the GRAT's corpus in Decedent's gross estate should come as no surprise to GRAT grantors. A GRAT's risks are well-known, with the foremost being that the grantor may die before the GRAT's termination. *See* Kerry O'Rourke Perri, *Understanding Grantor Retained Annuity Trusts*, *Practical Law Trusts & Estates* (2020); Bergner, *supra*, ¶ 401.4.A.2 ("There is no solution to the problem of dying earlier than expected."). In setting up a GRAT, a grantor makes the decision that the potential benefits outweigh this risk. If the grantor does not die before the termination of a GRAT, the property passes to the beneficiaries free of the estate tax and with a gift tax that is diminished or even eliminated by the value of the retained annuity. Zaritsky, *supra*, ¶ 12.06. This benefit exceeds that of either immediate transfer of the properties (which would result in the application of the gift tax to the entire value of the property) or a transfer at death (which would result in the application of the estate tax to the entire property). GRATs, like other tax-avoidance devices, cannot "escape the force of this section by hiding behind legal niceties contained in devices and forms created by conveyancers." *Church's Estate*, 335 U.S. at 646 (quotation omitted).

**III**

Badgley also challenges 26 C.F.R. § 20.2036-1(c)(2), which includes the formula the IRS uses to calculate the portion of the property includable under § 2036(a). The regulation interprets § 2036(a) to provide that GRATs are

includable in a grantor's gross estate because they are sufficiently tied to the grantor.[7]

Badgley's argument regarding the formula is limited to two sentences and two footnotes, without a single citation to legal authority. As we have previously held, arguments presented in such a cursory manner are waived. Federal Rule of Appellate Procedure 28(a)(8)(A) requires an appellant's opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Id.* "Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).

Even were Badgley's challenge to the formula not waived, it would not apply to this case. She asserts that the formula is flawed because it assumes that the annuity payment will come entirely from the GRAT's income, rather than contemplating the amortization of principal. But she does not argue that Decedent's annuity contemplated the amortization of principal, or even that the formula is flawed with regards to Decedent's annuity. She also does not contest the government's assertion that her argument about the formula does not apply to Decedent's annuity. Rather, she merely contends the formula might be arbitrary if applied to a short-term GRAT that contemplates the amortization of principal as the primary source for the annuity payment, which is not the case here. Without

---

[7] Badgley argues this is an invalid interpretation of the statute. Because we conclude that GRATs are includable under § 2036(a)(1), we do not address this argument.

sufficient or compelling argument, we decline to address the validity of § 20.2036-1(c)(2).

## IV

**AFFIRMED**.