Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

In re Eileen Ryan Revocable Trust.
Constance M. Ryan, appellant, v.
The Ryan Foundation et al., appellees.

___ N.W.3d ___

Filed May 3, 2024.    No. S-23-354.

1. **Decedents' Estates: Appeal and Error.** Appellate review under the Nebraska Probate Code is an issue-specific approach.
2. **Trusts: Equity: Appeal and Error.** Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record.
3. **Declaratory Judgments.** Whether an action for declaratory judgment is to be treated as one at law or one in equity is to be determined by the nature of the dispute. The test is whether, in the absence of the prayer for declaratory judgment, the issues presented should properly be disposed of in an equitable action, as opposed to a legal action.
4. **Wills: Trusts: Judgments: Appeal and Error.** The interpretation of the words in a will or a trust presents a question of law. In instances when an appellate court is required to review cases for error appearing on the record, questions of law are nonetheless reviewed de novo on the record.
5. **Equity: Reformation: Appeal and Error.** A proceeding to reform a written instrument is an equity action. Because reformation is an equity issue, an appellate court reviews a reformation issue in a trust administration proceeding de novo on the record. In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.
6. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

7. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

8. **Declaratory Judgments: Parties.** When declaratory relief is sought, it is a statutory requirement that all persons shall be made parties who have or claim any interest which would be affected by the declaration.

9. **Parties: Words and Phrases.** A party is "indispensable" when the party has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest.

10. **Trusts: Parol Evidence: Reformation.** Parol evidence can be used in actions seeking reformation of trust instruments, and a court may rely on such extrinsic evidence.

Appeal from the County Court for Douglas County: Thomas K. Harmon, Judge. Affirmed.

Daniel J. Welch and Damien J. Wright, of Welch Law Firm, P.C., for appellant.

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellee Steven Ryan.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Constance M. Ryan filed a petition in the county court for Douglas County seeking to interpret and declare rights or reform the trust instrument of her late mother, Eileen A. Ryan. At the center of this appeal are competing interpretations of a provision that bequeathed $5 million in what is referred to as "Countable Assets" to each of Eileen's five children. Constance maintained she had not yet received the full amount of Countable Assets. Constance specifically argued that certain inter vivos gifts she had received during Eileen's lifetime were intended by Eileen to be separate and distinct from the testamentary bequests made in Eileen's trust instruments and

that therefore, such gifts would not reduce the amount she would receive under the Countable Assets provision. Based on the language of the trust instrument and evidence, the county court found that Constance had already received more than the $5 million due in Countable Assets. The county court granted summary judgment against Constance on all issues and dismissed Constance's petition. Constance appeals. We affirm the orders of the county court.

## II. STATEMENT OF FACTS

On October 19, 2007, Eileen executed the "Third Amended and Restated Trust Agreement" (Trust Agreement) that created the Eileen Ryan Revocable Trust. The Trust Agreement used a marital and family trust arrangement such that if Eileen predeceased her husband, Wayne L. Ryan, her assets would be divided into "marital" and "family" shares. The marital and family shares would then be further divided into subtrusts. The assets would be held in subtrusts for the remainder of Wayne's lifetime, with provisions for distribution of income or principal under certain circumstances.

Eileen died in 2013, at which point the Eileen Ryan Revocable Trust was created and funded. This proceeding concerns a portion of the Trust Agreement governing the Eileen Ryan Marital Trust (Marital Trust) that bequeathed $5 million in Countable Assets to each of Eileen's children. Eileen and Wayne had five children: Constance, Timothy Ryan, Stacy Ryan, Carol Ryan, and Steven Ryan (collectively the children). Only the Countable Assets provision in the Marital Trust is specifically at issue in this case, and we sometimes refer to the provision at issue as falling under the Trust Agreement for ease of reference.

After Wayne died in 2017, the children began disputing the Countable Assets bequest, some asserting that the $5 million bequest had already been satisfied by amounts each child previously received from "Grantor Retained Annuity Trusts" (GRATs) established by Eileen and Wayne prior to Eileen's death.

### 1. The Contested Trust
### Language of Section 9

Below, we set forth relevant portions of the Trust Agreement concerning the Countable Assets included in Eileen's bequests to each of the children. Section 9(e)(i) of the Trust Agreement provided that the amount distributed to a particular child of the settlor would be "[the] amount, if any, as needed at the time of the death of the survivor of Settlor and Settlor's husband to give [$5 million] in Countable Assets (as defined below) to each of Settlor's children." Section 9(e)(i) explained that

[t]o the extent that the Wayne L. Ryan Revocable Trust Agreement contains a similar bequest, the total of such bequests per child shall be [$5 million] and, to the extent assets are available within the Wayne L. Ryan Revocable Trust, shall be satisfied first pursuant to the Wayne L. Ryan Revocable Trust Agreement.

Countable Assets were defined in section 9(e)(i)(1) as follows:

"Countable Assets" for purposes of computing this [$5 million] shall include any amount(s) currently distributable to a child pursuant to other provisions of the Eileen Ryan Revocable Trust or the Wayne L. Ryan Revocable Trust, *any amount passing to Settlor's children pursuant to any Irrevocable Trust which either Settlor and/ or Settlor's husband have established during their lifetimes*, and any amounts passing automatically to any of Settlor's children by reason of either of the deaths of Settlor and/or Settlor's husband by virtue of beneficiary designation, survivorship, payable on death transfer or joint title (or joint ownership). Countable Assets shall also include any assets, at their current values, from any of the above sources even if not currently distributable to such child if the only reason such amounts are not currently distributable is because the beneficiary has not reached a required age for distribution. Any debt owing to Settlor by a child, as evidenced by a promissory note or other loan documentation, shall be extinguished and

the amount of remaining unpaid principal and accrued interest, if any, otherwise due and owing to Settlor shall count toward such [$5 million] for such child.

(Emphasis supplied.)

The Trust Agreement was written and updated several times. The final and controlling version was made on October 19, 2007, and the Countable Assets provision contained in the Marital Trust remained substantially the same as it was in a 2004 version of the Trust Agreement. In the 2007 Trust Agreement, the residuary from the bequest of Countable Assets would be split one-half to the Ryan children and one-half to The Ryan Foundation.

## 2. The GRATs

In July 2007, Eileen and Wayne each implemented GRATs funded by Streck, Inc., shares. The record shows that GRATs are a type of irrevocable gifting trust that allow a grantor to pass wealth to the next generation with little or no gift tax cost. GRATs allow a grantor to transfer property to a beneficiary while retaining the right to an annuity from the transferred property. *Badgley v. U.S.*, 957 F.3d 969 (9th Cir. 2020). The grantor creates an irrevocable grantor trust for a fixed term of years, transfers assets into it, and designates trustees and beneficiaries. *Id*. The grantor receives an annuity for a specified term of years. *Id*.

In earlier proceedings in this case, and prior to Constance's present petition, the county court made a specific finding that each of the children had received 2,665,346 shares of Streck from the GRATs of Eileen and Wayne. At that time, the court valued the shares of each child at $7,383,008.

## 3. Proceedings

Constance petitioned the county court to interpret the trust instrument and declare rights or to reform the trust. The petition alleged that a dispute existed as to the interpretation of the provisions of section 9 regarding the Countable Assets bequest because other beneficiaries had asserted that the

bequest had been satisfied by distributions that the children received in 2009 from the GRATs. The petition alleged that such interpretation was contrary to the language of the trust instrument and contrary to Eileen's actual intention that each of the children would receive $5 million from the Marital Trust. To the extent the language of the trust instrument did not reflect Eileen's actual intent, the petition also sought reformation to bring certain Trust Agreement provisions concerning the Marital Trust in line with Eileen's intentions. See Neb. Rev. Stat. § 30-3841 (Reissue 2016). See, also, Unif. Trust Code § 415, 7D U.L.A. 176 (2018).

### 4. Cross-Motions for Summary Judgment

On January 28, 2022, Constance filed a motion for summary judgment. On July 21, 2022, Steven, acting as personal representative of Wayne's estate (Personal Representative), filed a motion for partial summary judgment as to the interpretation of the trust. Through counsel, The Ryan Foundation and Timothy, Carol, and Steven, acting individually, filed joinders to the motion filed by the Personal Representative. Present at the hearing on the motions were counsel for Constance; Timothy, Carol, and Steven; the Personal Representative; The Ryan Foundation; First National Bank of Omaha, the current trustee (FNBO-Trustee); and the Attorney General's office.

The county court admitted affidavits and extensive documentary evidence. Constance offered extrinsic evidence to support her argument for reformation of Eileen's trust. The extrinsic evidence includes estate planning memorandums, other versions of the Trust Agreement, and affidavits, including Constance's affidavit testimony regarding meetings she attended at which the trust was discussed. They were offered for the limited purpose of determining the question of whether the Trust Agreement should be reformed.

In an order filed March 24, 2023, the county court determined that the Trust Agreement was not ambiguous and found that Eileen's intent could be clearly ascertained from the

language of the bequest. It noted that Eileen was a sophisticated businesswoman, as well as an experienced creator of trusts, and that the Trust Agreement was executed after Eileen consulted privately with counsel. The court's order addressed the issue of whether the GRATs were includable as irrevocable trusts under the second clause of section 9(e)(i)(1). The court determined that the amounts the children received from the GRATs were Countable Assets because they satisfied the trust language as "any amount passing to Settlor's children pursuant to any Irrevocable Trust which either Settlor and/or Settlor's husband have established during their lifetimes."

Our record shows that the proceedings in this matter continued for several years prior to the present motions and that some of the issues in the matter before us implicate disputes regarding when and how shares of Streck stock should be valued. The county court found that assets received from the GRATs satisfied the distributions of $5 million to Constance and the other children. The court found that Constance was not entitled to additional assets under equalizing provisions in the Trust Agreement. The court rejected Constance's argument to the effect that distributions from the GRATs were inter vivos rather than testamentary gifts and, in her view, were ineligible to be treated as Countable Assets. The county court granted the partial summary judgment motion filed by the Personal Representative.

Subsequently, Constance moved to alter or amend the order. At the hearing on the motion, the parties made stipulations and jointly asked the county court to grant the motion to alter or amend all issues presented, resulting in rulings to the effect that the Personal Representative's motion for partial summary judgment was treated as a motion for full summary judgment and was granted, and all issues raised in Constance's petition for declaratory relief and for reformation were decided unfavorably against her. On April 27, 2023, the county court filed the second order that granted summary judgment on all issues and denied and dismissed Constance's petition.

In its April 27, 2023, order, the county court reiterated its determination that the language of the Trust Agreement was not ambiguous. It further determined that Constance did not present the court with evidence to create a question of fact as to whether, through mistake, the trust failed to contain the terms that Eileen intended. It found no genuine issue of material fact as to whether a mistake of fact or law affected the specific terms of the document or were inconsistent with Eileen's intent at the time the trust was created. See § 30-3841.

### 5. Motion in Limine

Also relevant in this appeal are issues stemming from a motion filed by Constance prior to the hearing on the motions for summary judgment. Constance's motion in limine challenged Steven's participation and asserted that Steven, acting as the Personal Representative, "is not a beneficiary" and "is not an interested party." The motion in limine sought to prohibit any "evidence, argument, questioning of witnesses, or statements of counsel referring or relating to the Estate's tax filing, tax payment, or alleged IRS 'approval' of its tax filing." Steven, as the Personal Representative, had appeared in prior proceedings in this matter for several years prior to the motions for summary judgment, and notably, his motion for summary judgment herein was joined by some of the other children and other parties. The court denied Constance's motion in limine and found that the Personal Representative's administration of Wayne's estate and its obligation for estate and inheritance taxes owed by Eileen's estate are intertwined matters. Steven was permitted to introduce evidence of valuations of assets and the process by which tax filings on behalf of Wayne's estate were prepared pursuant to court order in collaboration with the FNBO-Trustee and the Attorney General. As part of this tax filing, Countable Assets were valued, calculated, and accepted by an Internal Revenue Service determination, the Attorney General, the trustee for federal estate tax purposes,

the Douglas County Attorney, and the county court for inheritance tax purposes.

Constance appeals from the orders of March 24 and April 27, 2023. The Personal Representative filed a brief responding to Constance's assignments of error.

### III. ASSIGNMENTS OF ERROR

Constance generally claims that the county court erred when it granted summary judgment against her and denied and dismissed her petition. Constance specifically claims, summarized and restated, that the county court erred when it determined that (1) the GRATs distributed to the children prior to Eileen's death were irrevocable trusts and satisfied Eileen's Countable Assets bequest of $5 million to each of the children and (2) the evidence did not require reformation of the trust instrument. She further claims that (3) the court erred when it permitted Steven, acting as the Personal Representative of Wayne's estate, to offer evidence and argument on the Countable Assets issue.

### IV. STANDARDS OF REVIEW

[1] Appellate review under the Nebraska Probate Code is an issue-specific approach. See *In re Margaret L. Matthews Revocable Trust*, 312 Neb. 381, 979 N.W.2d 259 (2022).

[2] Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record. *Id*.

[3,4] Whether an action for declaratory judgment is to be treated as one at law or one in equity is to be determined by the nature of the dispute. *Id*. The test is whether, in the absence of the prayer for declaratory judgment, the issues presented should properly be disposed of in an equitable action, as opposed to a legal action. *Id*. The interpretation of the words in a will or a trust presents a question of law. *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021). In instances when an appellate court is required to review cases for error

appearing on the record, questions of law are nonetheless reviewed de novo on the record. *In re William R. Zutavern Revocable Trust*, 309 Neb. 542, 961 N.W.2d 807 (2021).

[5] A proceeding to reform a written instrument is an equity action. *In re Trust Created by Isvik*, 274 Neb. 525, 741 N.W.2d 638 (2007). Because reformation is an equity issue, an appellate court reviews a reformation issue in a trust administration proceeding de novo on the record. See *id.* In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *Id.*

[6,7] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## V. ANALYSIS

In this appeal, Constance repeats her arguments made below, including that the Countable Assets in the Trust Agreement do not include completed lifetime gifts such as the distributions from the GRATs. Constance claims that the county court improperly "relied upon a technical definition" when it found that the Trust Agreement was unambiguous, brief for appellant at 36, and instead should have found that Eileen's actual intent was for the children to receive an additional $5 million, even if each child had received assets from irrevocable sources in Eileen's lifetime. Alternately, Constance contends the trust should be reformed based on extrinsic evidence she claims demonstrates Eileen's true intentions.

The Personal Representative contends that the Trust Agreement is not ambiguous, that there are no genuinely controverted issues of material fact, and that Constance has already received the $5 million in Countable Assets. He asserts that Constance's evidence was not sufficient to establish a genuine issue of material fact as to whether Eileen's intent and the terms of the Trust Agreement in section 9(e)(i)(1) were affected by a mistake of fact or law. The county court found merit to the contentions of the Personal Representative, as do we.

### 1. The County Court Did Not Err When It Denied Constance's Motion in Limine Concerning the Personal Representative

As an initial matter, we address Constance's claim that Steven, acting as the Personal Representative of Wayne's estate, should not have been allowed to participate in the present proceedings, including the filing of the motion for partial summary judgment. We note that other parties joined the motion for partial summary judgment and that the motion was squarely before the county court. Constance asserted that Steven should not have been allowed to offer evidence of the interpretation and valuation of the Countable Assets. Although there may be other impacts, Steven's primary asserted basis for participation was that the outcome would affect the tax returns he was obligated to file as the Personal Representative of Wayne's estate, which returns are impacted by the value of Eileen's estate. We believe this assignment of error is without merit.

[8,9] This is an appeal from Constance's request to declare rights under the Trust Agreement. When declaratory relief is sought, it is a statutory requirement that "all persons shall be made parties who have or claim any interest which would be affected by the declaration." Neb. Rev. Stat. § 25-21,159 (Reissue 2016). See *SID No. 2 of Knox Cty. v. Fischer*, 308 Neb. 791, 957 N.W.2d 154 (2021). Our cases have generally

described those who must be made parties as statutorily mandated necessary parties, interested or necessary parties, significant necessary parties, or necessary and indispensable parties. *Id.* A party is "indispensable" when the party has an interest in the controversy to an extent that such party's absence from the proceedings prevents the court from making a final determination concerning the controversy without affecting such party's interest. *Id.*

Here, the county court could not make a final determination concerning the controversy without affecting the interest of the Personal Representative. Neb. Rev. Stat. § 30-3812 (Reissue 2016) allows the court to intervene in the administration of a trust, including an action to declare rights, to the extent its jurisdiction is invoked by an interested person or as provided by law. See Unif. Trust Code § 201, 7D U.L.A. 114 (2018).

Constance argues that since a personal representative may lack standing to challenge an order of distribution, or appeal the distribution of a probate estate, see 34 C.J.S. *Executors and Administrators* § 673 (2022) and *In re Estate of Craig*, 101 Neb. 439, 163 N.W. 765 (1917), then it follows that he or she would not be allowed to participate in an action to declare rights under a trust. We do not agree.

In this case, the Personal Representative was not taking an appeal or challenging an order of distribution but was participating in an action to declare rights. He had been part of the proceedings and participated for several years prior to this matter. Although Steven was not a beneficiary in his capacity as the Personal Representative, he was indispensable because the proceedings affected his interests, which, in the instant case, were to dutifully administer and settle Wayne's estate. Eileen's Marital Trust assets were subject to estate taxes under Wayne's estate under the structure of the estate plan. Because Eileen's trust was included in Wayne's estate for various tax purposes, including a marital deduction, the size of Eileen's trust impacted Wayne's estate. There are other

impacts on Wayne's estate not repeated here. The county court had recognized the interconnectedness of the two estates for Nebraska inheritance tax calculations for Wayne's estate, and the Personal Representative had been discharged from personal liability by the Internal Revenue Service after a determination of the tax paid. A recalculation of the Countable Assets would affect the Personal Representative's duties. Thus, Steven was an indispensable party in this case and properly participated in the proceedings. This assignment of error is without merit.

## 2. Constance Received Sufficient Distributions in Eileen's Lifetime to Satisfy the $5 Million Countable Assets Bequest in Section 9 of the Trust Agreement

Constance asserts that we should interpret the Trust Agreement such that lifetime distributions such as those from the GRATs would not be Countable Assets under section 9(e)(i) of the Trust Agreement. We believe the interpretation urged by Constance is not consistent with the unambiguous language of the Trust Agreement, and there is no genuine issue of material fact that the children received more than $5 million in Countable Assets from, inter alia, distributions from irrevocable trusts such as the GRATs.

### (a) Article 9(e) of the Trust Agreement Is Not Ambiguous

Constance urges us to find that the Trust Agreement is ambiguous and that the "Irrevocable Trust" in section 9(e)(i)(1) pertains only to assets received from irrevocable trusts after Eileen's death. We decline to do so. The Trust Agreement's definition of Countable Assets is not ambiguous, as the county court correctly determined.

Pursuant to section 9, the Trust Agreement provides that the amount distributed from the Marital Trust on behalf of a particular child of the settlor would be "[the] amount, if any, as needed at the time of the death of the survivor of Settlor

and Settlor's husband to give [$5 million] in Countable Assets (as defined below) to each of Settlor's children." We repeat the contested portion of section 9(e)(i)(1):

> "Countable Assets" for purposes of computing this [$5 million] shall include any amount(s) currently distributable to a child pursuant to other provisions of the Eileen Ryan Revocable Trust or the Wayne L. Ryan Revocable Trust, *any amount passing to Settlor's children pursuant to any Irrevocable Trust which either Settlor and/ or Settlor's husband have established during their lifetimes*, and any amounts passing automatically to any of Settlor's children by reason of either of the deaths of Settlor and/or Settlor's husband by virtue of beneficiary designation, survivorship, payable on death transfer or joint title (or joint ownership). Countable Assets shall also include any assets, at their current values, from any of the above sources even if not currently distributable to such child if the only reason such amounts are not currently distributable is because the beneficiary has not reached a required age for distribution. Any debt owing to Settlor by a child, as evidenced by a promissory note or other loan documentation, shall be extinguished and the amount of remaining unpaid principal and accrued interest, if any, otherwise due and owing to Settlor shall count toward such [$5 million] for such child.

(Emphasis supplied.)

Constance suggests several interpretations, focusing on the testamentary nature of the Countable Asset bequest and emphasizing the language of the first clause. She argues that phrases like "currently distributable" are testamentary in nature, and thus the section is "intended to capture amounts passing through irrevocable trusts *that exist at the time of [Wayne's] death*." Brief for appellant at 29. We disagree with this interpretation.

The interpretation of the words in a will or a trust presents a question of law. *In re Estate of Brinkman*, 308 Neb. 117,

953 N.W.2d 1 (2021). The clauses in section 9(e)(i)(1) are not uncertain, and reading the Trust Agreement as a whole does not make these terms ambiguous. For purposes of computing the $5 million, the definition of Countable Assets, as printed in italics and quoted above, includes "any amount passing to Settlor's children pursuant to any Irrevocable Trust, which either Settlor and/or Settlor's husband have established during their lifetimes." We believe "any amount . . . pursuant to any Irrevocable Trust" includes the amount the children received from the irrevocable GRATs, and such distributions were therefore Countable Assets. Eileen was a sophisticated businesswoman and an experienced creator of trusts, and the Trust Agreement was executed after consulting privately with counsel. She was capable of excluding inter vivos gifts from the "Irrevocable Trusts" provision included in the Countable Assets, as illustrated by the previous clause that targeted amounts "currently distributable" at the time of Wayne's death. When considering the complete provision, the reasonable interpretation is to include distributions from the GRATs as Countable Assets.

### (b) Under Section 9's Unambiguous Language, Constance Received $5 Million in Countable Assets

Because in earlier proceedings the county court had valued the shares of Streck that each child received at $7,383,008, the county court found that Constance had received more than $5 million from the GRATs distributions. The fact that the shares were valued at more than $5 million is not contested. Because these distributions were Countable Assets, there is no question that Constance was not entitled to additional assets to satisfy the $5 million bequest under the provisions in section 9.

### 3. Reformation of Trust

Constance also argues that regardless of whether the Trust Agreement was ambiguous, it should be reformed because

it did not reflect Eileen's actual intent. She relies on affidavit evidence discussing Eileen's estate planning process and identifies testimony that Eileen made subsequent statements to the effect that her estate plan included a $5 million bequest to each of her children. She argues that this extrinsic evidence creates a genuine issue of material fact as to Eileen's intent and requires reformation of the Trust Agreement. We do not agree.

[10] As an initial matter, we recognize that parol evidence can be used in actions seeking reformation of trust instruments, and a court may rely on such extrinsic evidence. See *In re Trust Created by Isvik*, 274 Neb. 525, 741 N.W.2d 638 (2007). Here, Constance's central argument is that a settlor's subsequent acts are of significance in construing an ambiguous trust instrument. See, 90 C.J.S. *Trusts* § 230 (2020); Restatement (Third) of Property: Wills and Other Donative Transfers § 10.2, comment *g.* (2003). However, the Trust Agreement was not ambiguous, and Constance's speculation regarding construction is not productive in this case.

We turn to the court's power to reform an unambiguous trust agreement. Constance's petition sought reformation under § 30-3841. In this regard, Constance suggests that this statutory section empowers a court to reform an unambiguous trust to conform to "the settlor's true intention," brief for appellant at 39, which she claims is shown by extrinsic evidence. However, her partial excerpt of § 30-3841 does not include the statute's focus on correcting mistakes. The full language of § 30-3841 provides:

> The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that *both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.*

(Emphasis supplied.)

Thus, the question before us in this case under § 30-3841 is whether there exists a genuine issue of material fact concerning whether both Eileen's intent and the terms of the trust "were affected by a mistake of fact or law, whether in expression or inducement." Of course, a "'post-execution change of mind'" would not afford a basis for reformation of a trust. *In re Trust Created by Isvik*, 274 Neb. at 537, 741 N.W.2d at 648 (citing Restatement (Third) of Property: Wills and Other Donative Transfers § 12.1, comment *h*. (2003)).

Even considering Constance's extrinsic evidence, we do not agree with Constance that the issues she identifies raise a genuine issue of material fact under § 30-3841. In this proceeding on summary judgment, where Constance would have the burden of proof regarding reformation at trial, the Personal Representative as movant may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of Constance's claim for reformation or by citing to materials in the record demonstrating that the evidence is insufficient to establish an essential element of Constance's claim. See *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Personal Representative satisfied this burden. Constance has identified no evidence in the record other than speculation that shows or infers that both the intent and the terms of the Trust Agreement were affected by a mistake of fact or law. Constance's conjectures regarding Eileen's understandings are thin. After viewing the pleadings and evidence in the light most favorable to Constance and giving her the benefit of all reasonable inferences deductible from the evidence, we determine that evidence on the reformation issue did not present a genuine issue of material fact as to whether *both* Eileen's intent and the terms of the Countable Assets provision were affected by a mistake of fact or law. The county court did not err when it granted summary judgment on the reformation issue and denied and dismissed Constance's petition. Constance's assignment of error regarding reformation is without merit.

## VI. CONCLUSION

Constance's assignment of error regarding the participation of the Personal Representative is without merit. Under the unambiguous language of section 9(e)(i)(1) of the Trust Agreement, the distribution from the irrevocable GRATs to Constance satisfied the $5 million Countable Assets bequest, and Constance is not entitled to further distribution pursuant to this provision. Constance has not identified evidence that both the intent and the terms of the Trust Agreement were affected by a mistake of fact or law under § 30-3841 precluding summary judgment, and the county court did not err when it rejected her request to reform the Trust Agreement. We affirm the orders of the county court.

AFFIRMED.

FUNKE, J., not participating.