**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-15712 |
| Plaintiff-Appellant, | D.C. No. 3:18-cv-05931-JCS |
| v. | |
| TIMBERLY E. HUGHES, | MEMORANDUM[*] |
| Defendant-Appellee. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-15713 |
| Plaintiff-Appellee, | D.C. No. 3:18-cv-05931-JCS |
| v. | |
| TIMBERLY E. HUGHES, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Submitted August 14, 2024[**]
San Francisco, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  See Fed. R. App. P. 34(a)(2).

Before: GRABER, CALLAHAN, and KOH, Circuit Judges.

Timberly Hughes appeals the district court's determination that she willfully failed to report foreign bank accounts, in violation of 31 U.S.C. §§ 5314 and 5321, and its entry of final judgment against her in the amount of $238,125.19. The United States appeals the district court's determination that the United States is not entitled to prejudgment interest or late payment penalties under 31 U.S.C. § 3717(a)(1), (e)(2). We have jurisdiction under 28 U.S.C. § 1291. We reject Hughes's challenges to the district court's decision, but we agree with the United States that the district court should have imposed prejudgment interest and late payment penalties. Accordingly, we affirm in part, reverse in part, and remand.[1]

1.      Hughes makes only passing references to an argument that the district court erred in applying the willfulness standard and concluding that her failure to file was willful. Such "cursory" arguments are usually deemed waived. *Badgley v. United States*, 957 F.3d 969, 978–79 (9th Cir. 2020). Even accounting for the "leeway" afforded pro se parties, *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023), there is nothing in the record to suggest that the district court clearly erred in its willfulness determination. *See DePuy Synthes Sales, Inc. v.*

---

[1] In a concurrently filed opinion, we address Hughes's contention that the district court applied the wrong legal standard when determining that her failure to file was willful. As to that issue, we affirm.

2

*Howmedica Osteonics Corp.*, 28 F.4th 956, 961 (9th Cir. 2022) (factual findings are reviewed for clear error). The district court correctly observed that there was "no doubt" that Hughes saw the questions about filing a Report of Foreign Bank and Financial Accounts ("FBAR") given that she *answered* the questions in both 2012 and 2013. In 2012, she even affirmed that she was required to file an FBAR (but she failed to do so). Moreover, the court did not clearly err in finding "inconsistent" and thus "not credible" Hughes's explanations as to why she failed to file.

      2.     Hughes devotes the bulk of her briefing to arguing that at least some of her foreign bank accounts with ANZ Bank New Zealand Limited contained funds that "were held as collateral or otherwise unavailable to her"; were therefore "correspondent or nostro accounts" that need not be reported under 31 C.F.R. § 1010.350(c)(4)(iv); and, accordingly, that their balances should not have been considered when calculating civil FBAR penalties against her. In support, Hughes offers a September 2023 letter (six months after the entry of final judgment) from ANZ Bank that purports to state that she lacked access to the funds in her accounts.

Hughes concedes that she waived this argument because the pertinent regulation, 31 C.F.R. § 1010.350(c)(4)(iv), "was not discovered" until Hughes began "working on her appeal." The district court denied Hughes's motion for reconsideration because Hughes failed to explain why she was unable to obtain the

3

letter from ANZ Bank until after the case had concluded or how 31 C.F.R. § 1010.350, which had been referenced throughout the case, was "newly discovered evidence." Thus, the letter from ANZ Bank is not properly part of the record on appeal. Nonetheless, we add that Hughes's argument fails on the merits as well. Even assuming that Hughes did not have access to all funds in the ANZ Bank accounts, this does not establish that the accounts were "correspondent or nostro accounts," terms that refer to types of accounts that a bank from one country holds at a bank in another country. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165 n.3 (2d Cir. 2013); *United States v. BCCI Holdings (Luxembourg), S.A.*, 977 F. Supp. 449, 452 n.3 (D.D.C. 1997). Hughes makes no attempt to show, and the ANZ Bank letter does not indicate, that the bank accounts associated with and named after her winery and wine bar were in fact opened and operated by a non-New Zealand bank at ANZ Bank. Indeed, Hughes stipulated that she had "financial interest in, and signature authority over" the bank accounts at issue.

Hughes's contention that the assessment of penalties against her was arbitrary and capricious relies almost entirely on the above waived and incorrect premise that she was not required to report some or all of her accounts. To the extent that Hughes also renews her argument that the United States double counted certain funds transferred between accounts, she offers no reason to disturb the

district court's careful analysis and conclusion that Hughes misstated the relevant account numbers and balances and failed to show that there were additional transfers ignored by the United States.

3.      Lastly, Hughes asserts that she was unable to defend herself because she was denied access to an internal IRS document underlying the agency's decision to seek willful FBAR civil penalties. Hughes does not argue that the district court abused its discretion in concluding that the "notes and communications" among IRS agents, managers, and counsel fell "squarely within the deliberative process privilege." *See, e.g., Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 783 (9th Cir. 2022) (explaining basics of the privilege). Hughes instead simply states that, without access to the unredacted document, she was unable to see how the penalties against her were calculated. This assertion is incorrect. As the district court explained, the agency's penalty calculations were included in the record, unredacted except for Hughes's social security number.

4.      As for the cross appeal, we agree that the United States was entitled to collect prejudgment interest and late payment penalties. The district court's suggestion that the initial demand letter sent to Hughes in 2016 might not be valid because part of the United States' penalty calculation had been set aside as arbitrary and capricious cited no authority, and we find it unpersuasive. The

5

district court did not set aside the demand letter in its entirety or disturb the demand letter's determination that Hughes had willfully violated the FBAR statute, nor did it require the United States to send Hughes a new demand letter as part of its recalculated penalty. *See, e.g.*, *United States v. Schwarzbaum*, 24 F.4th 1355, 1367 (11th Cir. 2022) (a "remand to the IRS for recalculation of [a defendant]'s FBAR penalties" does not start the process over again, because the remand is "not for the IRS to issue new penalties, but for it to recalculate the penalties it has already assessed"). The district court's remand for the agency to recalculate Hughes's penalties did not render the initial demand letter invalid for purposes of calculating prejudgment interest or late payment penalties.

We also disagree with the district court that the United States was required to prove the applicable Treasury rates for assessing interest or late payment penalties. By statute, both rates are prescribed by the Treasury; the rates are not questions of fact that must be proven at trial. *See* 31 U.S.C. § 3717(a)(1) (the Treasury "shall publish" the annual rate of interest on debts owed to the United States), (e)(2) (agencies "shall assess" late payment penalties of "not more than 6 percent a year" for failure to pay a debt); 31 C.F.R. § 5.5(a) (Treasury entities specifically "shall assess" penalties "at the rate of 6% per year"). Moreover, Hughes never challenged the 1% interest rate or 6% penalty rate, either below or on appeal.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED** with instructions to award prejudgment interest and late payment penalties against Hughes and in favor of the United States.  Each party shall bear its own costs on appeal.